GEORGE W. COLLAMER v. CHAUNCEY GOODRICH.

[IN CHANCERY.]

*Usury. The mere discontinuance of a suit upon a usurious contract, no consideration for a discharge by the debtor of his claim to recover back the usury.*

G. employed T. to procure a loan of four thousand dollars for him, and agreed to pay him three hundred dollars commission for so doing. T. effected the loan from C., took his commission from the sum loaned, paid two hundred dollars back to C. for raising the money, retaining one hundred dollars himself, and the balance, thirty-seven hundred dollars, was paid to G., who gave C. his note for four thousand dollars, secured by mortgage. *Held*, that so far as the two hundred dollars paid by T. back to C. were concerned, the transaction was a mere cover for usury, and that in ascertaining the amount really due upon the mortgage note, in a proceeding to foreclose the mortgage, the two hundred dollars, and interest thereon from the date of the note, should be deducted from the amount apparently due upon the four thousand dollar note.

Previous to the commencement of the petition for foreclosure, C. brought a suit against G. upon the note, but it did not appear that any attachment of property was made thereon. This suit was settled under an agreement between the parties, by which G. paid C. fifteen hundred dollars, which was indorsed upon the note, and eighty-one dollars and twenty-five cents, which was not indorsed, being paid as a consideration for an extension of time upon the note. G. also, at this time, wrote a letter to T., stating, that in consideration of this settlement of the suit, and extension of the note, he relinquished and discharged all claims he might have against T. or C., for extra interest or commission. *Held*, that this discharge was without consideration, and did not debar G. from insisting upon any usurious payment made by him in connection with the note.

APPEAL from the decree of the court of chancery. This was a petition to foreclose a mortgage, executed by the defendant to the orator, to secure the payment of a note for four thousand dollars, given by the former to the latter. It appeared from the master's report, that in the summer of 1851, the defendant applied to James T. Thurston, to negotiate for him a loan of four thousand dollars, to be secured by mortgage on real estate. A contract was entered into between the defendant and Thurston, by which Thurston was to receive three hundred dollars, as a commission for effecting the loan. Thurston effected the loan from the orator, took his commission of three hundred dollars from the sum loaned, paid two hun-

Collamer *v.* Goodrich.

dred dollars to the orator for raising the money, and the balance, thirty-seven hundred dollars, was paid to the defendant, and this transaction was the sole consideration of the note for four thousand dollars, described in the mortgage.

It further appeared, that at different times since the execution of the note, the defendant had paid the orator divers sums of money, for extensions of time upon the mortgage note, which were not indorsed, or applied upon it. These payments were as follows: Aug. 17, 1853, forty dollars; Aug. 8, 1854, eighty dollars and seventy-five cents.

On the 21st of February, 1855, the defendant paid the orator eighty-one dollars and twenty-five cents, for an extension of time upon the mortgage note, the settling and discontinuance of a suit previously brought upon said note, and an arrangement by which the defendant paid the orator fifteen hundred dollars, which latter sum was indorsed upon the note.

At the time of this settlement, the defendant wrote a letter to Mr. Thurston, saying, that in consideration of the settlement, he relinquished and discharged all claims he might have against Thurston or the orator, for extra interest or commission.

. The master reported the amount due upon the note, if the defendant was not to be allowed the benefit of the two hundred dollars, and the other payments above mentioned, which were not indorsed upon the note, and the court rendered a decree of foreclosure for the orator, for that sum, and costs, from which the defendant appealed.

*T. P. Redfield,* for the defendant, cited *Moncure* v. *Dermott,* 13 Curtis (U. S.) 193; *Hazard* v. *Smith,* 2 Vt. 123; 2 Stark. Ev. 861; *Cuthbert* v. *Haly,* 8 Term. 390; *Wicks* v. *Gagerly,* 11 Eng. Com. Law 434; *Preston* v. *Jackson,* 3 *id.* 332; *Harrison* v. *Hammel,* 1 *id,* 263; *Nelson* v. *Cooley,* 20 Vt. 201; *Austin v. Harrington,* 28 Vt. 134; *Floyer* v. *Edwards,* Cowper 114; *Curtis* v. *McLaughlin,* 1 D. Chip. 111; *Andrews* v. *Pond,* 13 Curtis 43–51; *De Wolf* v. *Johnson,* 6 Curtis 438.

*Peck* v. *Colby,* for the orator, cited 13 Mass 515; 2 Selden 347; 2 Parsons' Cont. 399; 7 Johns. C. 69; 19 Johns. 160; 2 Cowen 341.

The opinion of the court was delivered by

PIERPOINT, J.    This is a bill in chancery brought to foreclose a mortgage.  The bill was taken as confessed, and referred to a master, to ascertain the amount due, and the questions now before this court arise on the report of the master.  It appeared from the report, that in 1851, the defendant appled to James T. Thurston, to negotiate for him a loan of four thousand dollars, and agreed with Thurston, to give him a commission of three hundred dollars, for effecting it.  Thurston made the loan for the defendant of the orator, took from the money the three hundred dollars, took one hundred dollars of it himself, paid two hundred dollars back to the orator, and paid the balance, being thirty-seven hundred dollars, to the defendant, who gave the orator his note for four thousand dollars, secured by mortgage.

It is now insisted on the part of the defendant, that the receipt of the two hundred dollars by the orator, from Thurston, was usurious, and that this sum should now be applied as a payment upon the note;

On the part of the orator, it is said that the defendant was dealing with Thurston alone, in this transaction, and that as between them, it was legal, and that there is no privity between the defendant and the orator.

There can be no question but what the defendant might employ Thurston to negotiate the loan for him, and pay him a commission for his services, and if this transaction is really of that character, the defendant's claim is clearly without foundation ; but we think it is asking quite too much of the court, to believe that the defendant agreed to pay Thurston three hundred dollars, simply as a compensation for his services in transacting this business.  The disposition which Thurston made of the money, we think indicates very clearly the purpose for which it was to be allowed, and all the facts stated in the report show that this sum was agreed to be allowed to him nominally as a compensation for services, but really, to enable him to accomplish the object of borrowing the money, by paying to the party loaning it an extra compensation for its use ; in other words, that it is a simple and transparent device to evade the operation of the statute against usury ; indeed, the report furnishes no other fact that satisfactorily accounts for the intervention of a third party.

Collamer *v.* Goodrich.

Treating Thurston as the agent of Goodrich in making this loan, the transaction as between the orator and Goodrich, is as follows: The orator agrees to loan Goodrich four thousand dollars, for the specified time, for which Goodrich is to give him his notes of that amount, secured by mortgage, and also pay him two hundred dollars extra interest. The notes are given, and the two hundred dollars paid out of the very money the orator loaned to Goodrich, and for which the notes were given that he is now attempting to enforce. That the contract was usurious, can not be doubted, but the parties attempted to cast a shade over it, by giving it the appearance of having been made solely by Thurston, and that he paid the usury out of his own money. We think that this arrangement is quite too transparent to mislead any one; in fact, the strongest argument in its favor seems to be, that it is too simple to have been resorted to for such a purpose.

But to look at this case in a different light, we are asked to decree that the defendant, Goodrich, shall pay the orator two hundred dollars, which he never received, which the orator never parted with, but which he retained in direct violation of the statute.

To do this, we think, would be clearly inequitable, and we are of the opinion that this sum of two hundred dollars, together with the other three items of money received by the orator, and which the master finds have not been accounted for, ought to be deducted from the orator's claim, unless the defendant, by the arrangement entered into on the 21st of February, 1855, and the letter he thereupon wrote to Thurston, has debarred himself from now insisting on their application.

It appears from the report, that prior to the 21st of February, the orator had commenced a suit on the note; that on said day, the orator and the defendant entered into an arrangement by which the defendant paid fifteen hundred dollars, that was applied on the note, together with eighty-one dollars and twenty-five cents, which was not applied, and the orator stopped the suit, and gave a further extension of the time of payment. It does not appear that the orator had attached property on his suit, or had obtained any right or advantage thereby, so that, on his part, it was only a waiver of his then present right to collect his note and give further time. In short, it was nothing more than an agreement on the part of the

orator to extend the time of payment, and any payment made by the defendant, over the legal rate of interest, in consideration thereof, would be usurious, and the defendant would have the right to insist on its application on the note.

In consideration of this transaction, the defendant wrote to Thurston, relinquishing and discharging all claims he might have against the orator, for extra interest.

We have already found, that at this time, the defendant had a legal and equitable claim on the orator, for the two hundred dollars and the other items referred to in the report, as for moneys usuriously paid. By the letter, the defendant discharges that claim, and at the same time assumes the liability to pay the legal rate of interest, and all this is done upon no other consideration than an agreement on the part of the orator, to forbear the collection of the original debt. This, instead of discharging an old usurious transaction, is the creation of a new one; it is the same in its legal effect as though this claim had been applied upon the debt, and then the defendant had paid the amount of it to the orator, for the further time granted.

We think, therefore, that this discharge was a nullity, and left the parties in precisely the same position, legally and equitably, that they occupied before the letter was written.

This result is, the decree of the chancellor is reversed, and the case is remanded, with instructions that the sum of two hundred dollars, together with the amount of the other items referred to in the master's report, and the interest thereon, be deducted from the orator's claim, and a decree made in favor of the orator, for the balance, and costs.