## POTTLE v. LOWE et al.

1. A loan of money made in consideration of the maximum legal rate of interest and one half of the commissions charged by a third person for negotiating the loan, is usurious; and, under such circumstances, it is immaterial whether the third person is the agent of the lender, or of the borrower, or of both.

2. A deed executed by a borrower under section 1969 et seq. of the code, to secure a debt infected with usury, and purporting not only to convey title to the lender, but also to confer upon the latter a power of sale, is void, and therefore ineffectual either to pass title or to create a valid power of sale.

3. The grantee in such a deed cannot, whether assuming to act either as the holder of the legal title, or as the attorney in fact of the grantor, make a conveyance which will pass the title to a third person.

(a) Whether or not the grantor would be estopped from setting up the invalidity of his deed as against an innocent purchaser without notice of the usury, is a question not now presented for decision.

4. Under the facts disclosed by the record, the verdict for the plaintiffs was manifestly contrary to law.

November 9, 1896. Argued at the last term.

Ejectment. Before Judge Hart. Jones superior court. October term, 1895.

*Hardeman, Davis & Turner* and *Richard Johnson*, for plaintiff in error. *Dessau, Bartlett & Ellis, R. V. Hardeman* and *Robert Hodges*, contra.

LUMPKIN, Justice.

This was an action of ejectment on the demises of Lowe and Small, the real defendant to which was Mrs. Pottle, who was in the actual possession of the premises. It appears from the record, that she and her mother, Mrs. Hamilton, who has since died, borrowed money from the Georgia Loan and Trust Company and gave notes for the same, secured by a deed, executed under section 1969 et seq. of the code, conveying to the lender the land in dispute. This deed contained a power of sale authorizing the loan com-

pany to sell the land in case of any default in paying the. interest subsequently falling due upon the notes, and also a further stipulation that, upon such default, the principal of the notes should, at the option of the grantee, become due and payable at once.  Default having been made, the loan company undertook to exercise this power of sale, and, in pursuance thereof, conveyed the land to the plaintiffs in the present action, who claim to have thus acquired the legal title.  The defense relied on by Mrs. Pottle was, that the security deed taken by the loan company was absolutely void, because given to secure a debt infected with usury; that consequently, the power of sale incorporated in the deed was likewise invalid and inoperative; and that the sale made by virtue thereof was a mere nullity, and could not operate to pass title into the plaintiffs.

The rate of interest expressed in the notes was eight per cent., which is the maximum legal rate in this State. O. A. Coleman was the general manager of the Georgia Loan & Trust Company.  According to his testimony, the company never parted with the full amount for which the notes of Mrs. Pottle and her mother were given, but, acting in its behalf, he retained a part of the money as commissions.  His exact expression was: "I retained the usual commissions for the Ga. Loan & Trust Co."  Again, L. J. Anderson, who represented the applicants for the loan, testified that from the $1,500 for which the notes were given, "$180.00 was deducted as commissions for negotiating said loan; $90 was retained by myself, and $90.00 by the Ga. Loan & Trust Co."  There was nothing to the contrary of this evidence; and therefore the fact was established beyond doubt or controversy that the lender actually received, in addition to the 8 per cent. reserved in the notes, a *bonus* in the shape of commissions exacted from the borrower through Anderson.  Possession of the land was never surrendered to the loan company, but remained in Mrs. Pottle; and the plaintiffs' alleged right

to evict her is based solely upon the two deeds above mentioned. There was a verdict in their favor, and the material questions presented for review will now be briefly discussed.

1. It surely cannot be doubted that the notes were infected with usury. The lender received for the use of its money more than 8 per cent.; and if this does not constitute usury, it would be difficult to conceive of a usurious contract. It makes not a particle of difference whether the commissions were charged by an agent of the loan company, or of the borrower, if the lender in point of fact actually received a portion of the same. From Coleman's testimony, it seems clear that in the very inception of this loan, the company contemplated exacting commissions in addition to the interest charged; and that its intention to do so was fully carried out, is shown by the testimony of Anderson. In *McLean* v. *Camak*, 97 *Ga.* 804, 25 S. E. Rep. 493, it was shown that if the agent of the lender, without his knowledge or consent, exacted commissions from the borrower, no part of which went to the lender, the contract of loan would not, as to the latter, be rendered usurious. The present case is entirely outside of the doctrine there invoked, and falls squarely within the rule announced in the first head-note, the correctness of which is no longer open to serious doubt or question. In this connection, see *Harrison* v. *Stiles*, 95 *Ga.* 264; 27 Am. & Eng. Enc. of Law, 1004, citing Collamer *v.* Goodrich, 30 Vt. 628, and McBroom *v.* Scottish Mort. etc. Invest. Co., 153 U. S. 318.

2. The deed executed by Mrs. Pottle and her mother, having been given to secure a usurious debt, was, under §2057(f) of the code, void—certainly so at the option of the makers. It is therefore clear that, upon the election of Mrs. Pottle to repudiate it, this deed would prove utterly ineffectual to pass title into the loan company. It was earnestly insisted, however, that even if this deed was not

good as a muniment of title, the power of sale was valid, notwithstanding the usury. We feel constrained to take the contrary view. The power of sale was part and parcel of the usurious transaction, and must stand or fall with the deed by which it was created. Its sole purpose was to better enable the loan company to carry out and effectuate its illegal contract with the borrower; and it became as much an integral part of the scheme by which the usury laws were violated as did the deed itself, or the notes given in pursuance thereof, which, with a view to covering up the real nature of the transaction, were made to recite an amount never in fact parted with by the lender. "To render a power valid, the purpose for which it is created must be a legal one." 18 Am. & Eng. Enc. of Law, page 914. Certainly, if the sole purpose for which it is created is void, the power cannot be exercised. Bates *v.* Bates, 134 Mass. 110. And even if the object of the power be a perfectly legitimate and valid one, it cannot be exercised if the instrument by which it is created be invalid or inoperative. Thus, "A power of sale dependent on a void trust falls with the trust." Penfield *v.* Tower *et al.*, 46 N. W. Rep. 413, citing Benedict *v.* Webb, 98 N. Y. 460, which is precisely in point. In other words, we understand the law to be: (1) if it is desired to create a power which will be operative, the instrument by which this object is sought to be accomplished must itself be both valid and legally sufficient —otherwise, the attempt to create the power will necessarily be abortive; or (2) if the power be itself vicious and incapable of legal enforcement, it cannot, of course, be exercised, whatever may be the character of the instrument by which the same was sought to be created. Applying either test to the power of sale contained in the deed now under consideration, it is clear such power could in no event be legally exercised; for not only was the instrument creating it void from its inception, but the power itself is invalid and vicious, because its sole object was to render successful a

deliberately formed purpose to violate the law against usury.

3. It necessarily follows that the loan company, the grantee named in this usurious deed, could not—whether assuming to act as the holder of the legal title, or as the attorney in fact of Mrs. Pottle and her mother, the makers of that deed—execute any conveyance which would operate to pass to a third person the title to the premises in controversy. This is so, simply because the legal title never passed into the loan company under the deed in question; and, as has been shown, the power of sale incorporated therein was invalid, and conferred upon the company no authority whatsoever to act as the representative of the grantors, or either of them. As a purely abstract proposition of law, it must certainly be recognized as true that a party having no title to property can convey none to another; and a vendee can claim to have acquired under a conveyance from his vendor no greater interest than the latter had to convey. Independently of the power of sale, therefore, the loan company could pass to a third person no title whatever to the lands involved in the present action. Whether the plaintiffs in ejectment acquired the legal title by virtue of the sale of the lands conducted by the loan company must, of course, depend upon the validity of that sale; and as the only authority under which the company assumed to act was a power of sale which was itself invalid and inoperative, the sale made in pursuance thereof is to be treated as a mere nullity. It is a fundamental principle of law that the purchaser at a void sale gets no title, and such was the character of the sale at which the plaintiffs bought.

Whether or not, as against an innocent purchaser at that sale who parted with his money in good faith and without notice of the usury, Mrs. Pottle would be estopped from setting up the invalidity of her deed to the loan company, is a question not now presented for adjudication. This was

a plain action of ejectment, in which the plaintiffs based their alleged right to recover upon the naked proposition that the title passed to them under the deed from the loan company. They did not by their pleadings invoke any application of the doctrine of estoppel relatively to Mrs. Pottle, nor did they by evidence attempt to show that they purchased in ignorance of the usury and therefore occupied the position of innocent purchasers entitled to protection by virtue of such doctrine. It seems clear, so far as they are concerned, that they were standing upon what they conceived to be their legal, rather than their equitable, rights. It is true that counsel for Mrs. Pottle presented to the court a request to charge, by which they sought to obtain an instruction to the effect that if Lowe and Small purchased with knowledge of the usury, or with notice of facts putting them on inquiry as to this matter, they could not be regarded as innocent purchasers. The court, however, rightly declined to give this request in charge, because there was no evidence to authorize it. Upon the cross-examination of James L. Anderson, a witness for the plaintiffs, a number of questions were asked with a view to proving that Lowe and Small paid for the land with knowledge of the usury, or at least with knowledge of the fact that Mrs. Pottle intended to contest the legality and validity of the sale; but the answers of the witness, properly regarded, amounted to merely negative evidence, and failed entirely to establish the facts thus sought to be elicited. No other witness was examined as to this matter. So there was no proof at all upon which a finding that the plaintiffs had either express or implied notice of the usury could have been rightly based, and hence the court in its charge very properly refrained altogether from undertaking to deal with the doctrine of estoppel. The question of its application to the facts in hand was neither involved nor passed upon at the trial, and therefore it is not now before this court for decision. We cannot, of course, assume either

that the plaintiffs were innocent purchasers, or that they were not. Upon this point, neither side has been fully and fairly heard in the court below. The case at the last trial was determined upon other issues. We are at liberty to deal with such questions only as were passed upon in the trial court and then brought here for review. Any ruling we might make upon a question not thus presented would be *obiter dictum*, and not really binding or conclusive upon any party at interest.

4. As has been seen, the plaintiffs signally failed to establish the contentions upon which they based their alleged right of recovery. Viewed in the light of the facts disclosed by the record now before us, the finding in their favor was wholly unwarranted and contrary to law; and a new trial should have been awarded the defendant.

*Judgment reversed.*