SAYLES et al. v. JACKSON et al.    (No. 2769.)*

(Court of Civil Appeals of Texas. Texarkana. June 8, 1923. Rehearing Denied June 14, 1923.)

Usury ⬅55—Amount in addition to loan held usury, and not compensation for securing a loan.

Where plaintiffs executed their note for $7,500, at 10 per cent. interest, to defendant, who indorsed it to a bank, which advanced that amount which defendant deposited with the bank, $2,500 to his own credit and $5,000 to plaintiff's credit, both parties drawing out such sums and plaintiff's repaying $7,500 to the bank, *held*, that the loan to plaintiff was by defendant, not the bank, and the $2,500 was usury, and not compensation to defendant for procuring loan.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by E. B. Sayles and another against J. H. Jackson and Security State Bank of Fort Worth. Judgment for defendants, and plaintiffs appeal. Judgment affirmed as to defendant Security State Bank, but reversed as against defendant Jackson, and rendered against him.

Appellants E. B. Sayles and J. W. Sayles were in the "oil well supply business" as partners under the name of "J. W. Sayles & Co." They were the plaintiffs in the court below. Appellees Jackson and the Security State Bank of Fort Worth were the defendants in that court. In the first count in their petition appellants alleged that on March 9, 1920, they borrowed $5,000 of Jackson, for which they executed a note for $7,500, payable to his order 30 days thereafter, with interest at the rate of 10 per cent. per annum from date, and that Jackson "at the time of accepting said note incorporated in it as principal $2,500 as usurious interest on said loan, and that at the time of the making of said loan and the execution of said note they only received $5,000." They further alleged that on April 9, 1920, they paid to the Security State Bank of Fort Worth, as Jackson's agent, $7,500 "in full of said note"; that $5,000 of $7,500 so paid was on account of the principal of said note, and the remain-

ing $2,500 thereof was on account of the usurious interest included therein; and that Jackson "wrongfully received and collected said $2,500 as usurious interest, in violation of articles 4975 and 4982 of Vernon's Sayles' Civil Statutes, and thereby became liable and bound to pay" them "the sum of $5,000." In the second count in their petition appellants made allegations similar to those in the first count, except that they alleged that the loan to them was made by the Security State Bank of Fort Worth, "through its agent, J. H. Jackson."

In his answer Jackson alleged that appellants, wishing to borrow $5,000 and being unable to do so, offered to pay him a "bonus" of $2,500 if he "would indorse and become surety upon a note for them and thus secure for them the sum of $5,000"; that he accepted the offer and indorsed appellants' note for $7,500, and in that way obtained $7,500 from the Security State Bank; that $2,500 of the $7,500 was the bonus to him "for raising said money" for appellants, and "in no sense a charge of interest"; and that he "never charged or collected any interest on said obligation." In its answer the Security State Bank alleged that on March 9, 1920, Jackson applied to it for a loan of $7,500 upon a note for that amount made by appellants, payable to Jackson's order and indorsed by him, and that it then advanced Jackson that sum; that thereupon Jackson deposited the amount with it, $2,500 to his own credit and $5,000 to the credit of appellants; that on March 10, 1920, appellants "drew a check for the said $5,000 and appropriated the said sum of money to their use and benefit"; that the $7,500 note was paid April 9, 1920, and that on April 12, 1920, Jackson "drew a check for the $2,500 and thereby received and appropriated the said sum to his own use and benefit"; and that it "actually paid Jackson $7,500 for the note" and "did not receive any interest other than that allowed by law."

After hearing the testimony the court instructed the jury to return a verdict in favor of the Security State Bank, and, the jury having done so, rendered judgment that appellants take nothing by their suit against it. On special issues submitted to them with reference to the controversy between appellants and Jackson, the jury found (1) that the $2,500 paid by the former to the latter was not interest on the loan of $5,000; but (2) was compensation to him "for procuring the loan of $5,000." On those findings the court rendered judgment, denying appellants a recovery of anything against Jackson.

Thornton & Margowski and W. S. Margowski, all of Fort Worth, for appellants.

Ginn & Harrington and Capps, Cantey, Hanger & Short, all of Fort Worth, for appellees.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused October 24, 1923.

WILLSON, C. J. (after stating the facts as above). By force of the Constitution and laws of this state every contract for a greater rate of interest than 10 per centum per annum is usurious; and any person who pays interest in excess of that rate on such a contract is entitled to recover) double the amount thereof of the person receiving or collecting same. Section 11, art. 16, of the Constitution; articles 4980 and 4982, Vernon's Sayles' Ann. Civ. St. 1914.

Appellants do not complain of the judgment so far as it is in favor of the Security State Bank. Their contention is that it appeared from the testimony as a matter of law that they paid, and appellee Jackson received and collected of them on the contract evidenced by the note, usurious interest amounting to $2,500, and therefore that the trial court erred when he refused their request that he instruct the jury to return a verdict in their favor against Jackson for $5,000. We think it so appeared, and that the trial court erred as claimed.

Testimony heard at the trial showed that on March 8, 1920, appellants called at the National Bank of Commerce of Fort Worth, of which Jackson was vice president, to see Mr. Benson, the president of said bank, with whom they had dealt on former occasions, about obtaining a loan of $5,000. They were told by Jackson that the president was out of the city, but would probably be back the next morning. They called at the bank again the next morning, and, the president being still absent, took up with Jackson the matter of procuring the loan. The testimony was conflicting as to what then and afterwards occurred between Jackson and appellants. Jackson testified: That appellants declared that they "didn't care to borrow any further moneys from the bank," and offered to pay him $2,500 if he would get the $5,000 they needed for them. That he told them he did not have the money himself, but "would see if he could get it." That later he called at the Security State Bank and was informed by the president thereof that he could get the money on his (Jackson's) note, or on a note indorsed by him and secured as he offered to secure it. That he then advised appellants of what passed between him and the president of the Security Bank. That they thereupon executed and delivered to him their note as follows:

$7,500.00.  Fort Worth, Texas, Mar. 9, 1920.

"30 days after date, without grace, I, we, or either of us promise to pay to the order of J. H. Jackson seventy-five hundred and no one-hundredths dollars, for value received, at the National Bank of Commerce of Fort Worth, with interest from date at the rate of 10 per cent. per annum, and ten per cent. of principal and interest additional for attorney's fee, if placed in the hands of an attorney for collection.   [Signed]  J. W. Sayles & Co.,
"By J. W. Sayles."

That he (Jackson) took the note to the Security State Bank, indorsed it in blank, and that that bank thereupon by his direction credited appellants with $5,000 of the amount thereof and him (Jackson) with $2,500 thereof on its books; and that he (Jackson) afterward (on April 12, 1920) checked out the $2,500 so placed to his credit. It conclusively appeared from other testimony that appellants received only $5,000 on account of the note, and that they paid the Security State Bank $7,500 on account thereof when the note became due.

On the case made by the facts and testimony stated, it is plain that appellants bound themselves to pay appellee or his indorsee $7,500 and 10 per cent. interest thereon, and that they did pay his indorsee $7,500. What was the consideration for their undertaking? Appellee insists it was the $5,000 loaned them and his services as a broker in procuring the loan for them. Who loaned the $5,000 to them? Clearly it was not the Security State Bank. If it loaned the amount of the note, instead of purchasing it outright of Jackson, as the testimony indicated it did, the loan was to Jackson, and not to appellants. Plainly, therefore, the answer to the question is that Jackson loaned the $5,000 to appellants. As he did, and received and collected of appellants $2,500 for the use thereof for 30 days, the transaction was usurious, and appellants were entitled to recover of him as they sought to.

The judgment will be affirmed, so far as it is in favor of the Security State Bank, but it will be reversed, so far as it is in Jackson's favor, and judgment will be here rendered against him in appellants' favor for $5,000 and interest thereon from June 8, 1922.