# Staunton.

ROANOKE MORTGAGE COMPANY *v.* HENRITZE.

September 20, 1928.

The opinion states the case.

*Walter A. Williams, Jr., Murray A. Foster, Birchfield & Birchfield* and *Woods, Chitwood, Coxe & Rogers,* for the plaintiff in error.

*Caldwell, Chaney & Loyd,* for the defendant in error.

PRENTIS, C. J., delivered the opinion of the court.

Roanoke Mortgage Company, Incorporated, hereinafter called the plaintiff, sued W. P. Henritze, seeking to recover certain commissions which it alleged the defendant had agreed to pay for negotiating a loan on a theatre building owned by him in the city of Roanoke.

During the progress of the trial, the defendant filed a plea of usury. There being no conflict in the evidence on this point, the jury were instructed upon that issue to find for the defendant, and that verdict and the judgment based thereon the plaintiff now seeks to have reversed.

This fair statement of the antecedent facts and the contract to be interpreted is made in the petition for a writ of error:

"In February, 1926, Henritze requested the plaintiff to secure for him a loan of $150,000.00, to be secured by a first mortgage on the Roanoke Theater building. No definite agreement was reached at that time as to the commissions to be paid for this service. It was at first thought that perhaps the loan could be secured at five and one-half per cent. interest, but after the plaintiff had taken the matter up with insurance companies, it was found that they were unwilling to lend on the theater building, because it was designed and could be used for only a special purpose.

"After some negotiations, the plaintiff found that the Old Dominion Mortgage Corporation, hereinafter referred to as the Richmond Company, of Richmond, Virginia, would be interested in 'handling' the loan at six per cent. interest. As Henritze was by this time convinced that he could not secure a lower rate of interest, the plaintiff arranged a meeting at its office in Roanoke on May 20, 1926, between its officers, Henritze and the president of the Richmond company.

"At this tripartite conference an agreement was reached. In order that the undertakings of the several parties might be made a matter of record, the following letters were then simultaneously executed, copies being furnished each of the three parties:

" 'May 20, 1926.
" 'ROANOKE MORTGAGE COMPANY, INCORPORATED,
 " 'Roanoke, Virginia.
" 'GENTLEMEN:

" 'I hereby agree to pay you for procuring a loan of $150,000.00 on my property on Campbell avenue, running through to Kirk avenue, and occupied by the Roanoke Theater, five and three-fourths per cent. which covers your commission and all costs. The commission to be paid on the closing of the loan, which will be closed on or before June 1, 1926.

    " 'Yours very truly,
     " 'W. P. HENRITZE.'

      " 'May 20, 1926.
" 'ROANOKE MORTGAGE COMPANY, INCORPORATED,
 " 'Roanoke, Virginia.
" 'GENTLEMEN:

" '*In re* W. P. Henritze application $150,000.00.

" 'We will handle loan of $150,000.00 on Mr. Henritze's property in Roanoke, known as Roanoke Theater property, fronting twenty-five feet on Campbell avenue, between Jefferson street and Henry street, and running back to Kirk avenue on which it fronts about eighty-six feet or so, with semi-annual curtailment of $4,000.00, the balance to be paid at the end of ten years; interest rate of six per cent. payable semi-annually, and brokerage charge as agreed between us. We will want the assignment of not less than $80,000.00 fire insurance, as additional collateral. We are to close this loan on or before June 1, 1926, reserving, in the event a release is not secured from the Massachusetts Mutual, sufficient funds to pay their loan. If there is any difficulty in securing a release from that company, we

will expect to be reimbursed for the amount we have paid, for we will not want a second mortgage on the property.

"'OLD DOMINION MORTGAGE CORPORATION,
"'By R. A. Ricks, *President.*'

"The defendant also executed a formal application for a loan, set out as exhibit two on page seventeen *et seq.* of the record. It was also understood and agreed between the parties that the loan papers were to bear date of May 15, 1926, in accordance with the practice adopted by the Richmond company of having the interest coupons on all loans negotiated by it fall due on either the first or fifteenth of the month."

The defendant subsequently declined to execute the deed of trust and procured the desired loan from another source. It is unnecessary for us to determine in this case whether he was justified in refusing to do so or not, because the only assignments of error are, (1) that the court permitted the plea of usury to be filed too late, and (2) that the court erred in construing the contract to be usurious.

(a) As to the first assignment, it is only necessary to say that such questions rest in the sound judicial discretion of the trial court, and are not ground for reversal unless that discretion is abused, and that Code, section 5554, provides, that "if no such plea is made, and the contract or assurance be in writing and shows that usurious interest has been therein contracted for, judgment shall be rendered for the principal sum only." This clause of the statute obliges the court to adjudge a contract usurious if it be in writing and the usury appears upon its face. There is no judgment here, of course, in favor of the prospective lender because this loan was never consummated and it was not a party to this proceeding.

■■ (b) The sole remaining question then is whether or not the contract is usurious. As to this we have no doubt whatever, and the learned counsel for the plaintiff makes this concession in the brief: "It is frankly conceded that brokerage commissions may not be recovered for negotiating a usurious loan. *Harrison* v. *Stiles*, 95 Ga. 264, 22 S. E. 536, note 21 A. L. R. 834. It is also well settled that the acceptance by the lender of any portion of the broker's commissions for negotiating the loan, taints the transaction with usury. Consequently, the only question in this appeal is the status of an underwriter under the usury laws."

■■ The contention of the plaintiff is that the Old Dominion Mortgage Corporation was to be underwriter and not a lender of the money. This, of course, requires a consideration of the facts and a construction of the written contract, aided by the parol testimony.

Referring to the written contract then, the proposal of the defendant to the plaintiff and the response of the Old Dominion Mortgage Corporation, both dated May 20, 1926, we do not find the word "underwriter" used anywhere, nor do we find any language which would indicate any contract for services such as are usual in underwriting agreements. The language of the Old Dominion Mortgage Corporation, on the contrary, indicates that it intended to become the lender of the money, and the language of the contract, "we will handle loan of $150,000.00," is not the language of an underwriting contract, but the language of a lender. The compensation which it was to receive for this loan, as shown on the face of the contract, is "interest rate of six per cent. payable semi-annually, and brokerage charge as agreed between us."

We are not left, however, without other evidence on this point, for this appears as coming from the attor-

ney when examining the chief witness introduced by the plaintiff.

"Q. Did he take the deed of trust with him?

"A. Yes, sir; he took the deed of trust with him.

"Q. You took the matter up with the Richmond company—the lending company?

"A. Yes, sir.

"Q. You communicated with Mr. Henritze as to what the lending company in Richmond authorized you to do?

"A. We could not get in touch with Mr. Henritze until after dinner on Saturday. * * *."

And again the same witness on cross-examination:

"Q. You don't mean to tell the court that the reason you would not make the loan June 1st was because of the government bond, do you?

"A. I do; yes, sir; I might state that was one reason we did not close the loan that day.

"Q. If that was the only reason, would they have held up closing the loan?

"A. We are advised that it would.

* * * * * * *

"A. By the lending company.

"Q. The Old Dominion Mortgage Corporation of Richmond?

"A. Yes, sir."

So that we have not only the language of the contract, which is entirely inappropriate as evidence of an underwriting contract, but we have the construction put upon that contract by the plaintiff's attorney and its chief witness. All that is left then is the insistence that it was in fact an underwriting contract merely because the lending company proposed thereafter, as it could, to seek and procure purchasers for the bonds which were to be executed and delivered to it as the lender. This purpose, of course, is entirely insufficient to change the nature of the contract. It is

not a question of subterfuge, or the concealment of usury. The written contract itself provides that as compensation for the loan the lender should receive more than six per cent per annum, the legal rate—that is, it was to receive the legal rate plus a share of the commissions of five and three-quarter per cent. These commissions were to be divided between the plaintiff, the loan broker, and the Old Dominion Mortgage Corporation, the lender of the money. While it is conceded that if this be the true construction of the contract there is no error in the judgment, we cite a few authorities supporting this view, and there are no authorities to the contrary, so far as we know.

This appears in the note to *Bank of Newport* v. *Cook*, 60 Ark. 288, 30 S. W. 35, 29 A. L. R. 761, 46 Am. St. Rep. 197: "The principle governing transactions of this character is that the lender shall not receive for the use of his money a greater profit than allowed in the statute against usury, and, where he knowingly does so, that statute is violated. Hence, if it is a part of the transaction that the mediator shall divide with the lender the commission or other thing of value which is to be given the latter for securing the loan, the transaction is usurious. *Collamer* v. *Goodrich*, 30 Vt. 628; *McBroom* v. *Scottish, etc., Co.* 153 U. S. 318; [48 S. Ct. 852, 38 L. Ed. 729]; *Fowler* v. *Equitable, etc., Co.*, 141 U. S. 384; [12 S. Ct. 1, 35 L. Ed. 786]; *Roberts* v. *Mathews*, 77 Ga. 458."

*Pottle* v. *Lowe*, 99 Ga. 576, 27 S. E. 145, 59 Am. St. Rep. 250; 27 R. C. L., section 38, page 237; R. C. L. Supp., Vol. 4., page 1750.

There is an extensive note on the general subject to the case of *First National Bank of Ada* v. *Phares*, 70 Okl. 255, 174 Pac. 519, 21 A. L. R. 793, note page 834.

In *Jones* v. *Phillippe* (1918), 135 Ark. 578, 206 S. W. 40, it was held that where contemporaneously with the

making of a note bearing the full legal rate of interest, given for a loan which was negotiated through an intermediary, the borrower paid a bonus to the intermediary, which he, for the purpose of inducing the making of the loan, divided with the lender, the contract was usurious whether the intermediary was the agent of the borrower or of the lender, or of both, since the lender thereby intentionally received for the making of the loan something in addition to the full legal interest.

The later cases on the general subject of usuary are collated in a note to *Stuart* v. *Durland*, 115 Neb. 211, 212 N. W. 31, 53 A. L. R. 739, but there are no later cases cited which in the slightest degree qualify the well established rule upon which this decision is based.

. It is suggested in the brief that we may subject ourselves to being called reactionary if we follow this well established rule in this case, because the convenience and necessities of modern business require that such transactions as this should be encouraged and upheld by the courts. We should not like to be called bad names, but better so than that we should fail truly to declare the law. So long as the usury statute remains in our Code, all business, whether modern or archaic in its methods, must respect it. If the law be unwise, the remedy lies with the General Assembly. There is no insuperable difficulty in drawing underwriting contracts. Such contracts may lawfully provide that the borrower shall pay reasonable compensation for special services rendered, and these will be upheld by the courts.

It is unnecessary to discuss the authorities relied on for the plaintiff in error, because they all relate to contracts so entirely different from the contract which is here interpreted.

*Affirmed.*