# Richmond

H. T. RICHESON AND OTHERS v. BEN WOOD.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*David Meade White*, for the plaintiffs in error.

*T. Nelson Parker*, for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action originally instituted in the Civil Justice Court of the city of Richmond by Ben Wood against H. T. Richeson, Frank S. Richeson and Robert C. Bayliss, partners doing business as H. T. Richeson and Company. Judgment was there rendered against the defendants, who then appealed to the Law and Equity Court of the city of Richmond. The action was brought to recover $460.00, which Wood alleges he paid to the defendants under a contract which was a usurious consideration for a loan of $7,000.00 made to him by them. Upon the trial in the Law and Equity Court, judgment was rendered against the original defendants and the surety on their appeal bond for $460.00, to which judgment the defendants have been granted a writ of error.

The questions raised by the petition require no notice of

the pleadings, and there is no material conflict in the evidence, which so far as is material is given below.

The defendants were real estate agents and loan brokers. Wood was the owner of a lot of land at the southeast corner of Thirty-fourth and Leigh streets in the city of Richmond, upon which he had almost completed the erection of a gasoline filling station. Not having the funds to complete the filling station, Wood consulted the defendants about selling a part of the property. They advised him not to sell, and to erect on the property some store buildings in addition to the filling station; and undertook to procure a loan of $10,000.00 for him.

About March 1, 1926, the defendants procured for Wood a loan of $10,000.00 from Frederick E. Nolting and Company, which was secured by a first mortgage on this property; and for this service charged him a brokerage fee.

The contract obligated Wood to complete the filling station and erect three store buildings on the lot. The $10,000.00 proved to be insufficient for this purpose, and the defendants from time to time advanced money to Wood to enable him to complete these buildings, and for other purposes. The sums so lent to Wood by the defendants were from funds belonging to the defendants or funds belonging to their clients with which they were dealing as their own. By November 1, 1926, Wood had become indebted to the defendants for such loans for more than $7,000.00.

On or about that date, Wood executed and delivered to the defendants his note dated November 1, 1926, drawn for $7,000.00, payable three years after date, and also certain notes for the interest thereon at six per cent per annum. The notes for both principal and interest were drawn payable to bearer at First and Merchants National Bank, Richmond, Virginia, and secured by a second lien deed of trust on said property, in which deed H. T. Richeson

was named as trustee. Under date of November 8, 1926, the defendants credited Wood's account with them "by your three year loan dated November 1, 1926, $7,000.00."

Frank S. Richeson, a witness for himself and the other defendants, testified with reference to the making of the $7,000.00 loan as follows: "The last loan that Mr. Wood secured through our office on this property was the mortgage for $7,000.00, * * * for which we charged a brokerage of five per cent for three years. The money in this instance was borrowed from the First and Merchants National Bank of Richmond, and the notes of Mr. Wood were attached to our notes as collateral security. The funds loaned Mr. Wood were not my money. * * * The brokerage of five per cent charged on this loan was paid December 21, 1926, at which time the account with Mr. Wood was finally closed, and we charged him no further brokerage.

"When Mr. Wood applied for the $7,000.00 loan * * * I said something to him about giving us the exclusive sale rights of the property, and Mr. Wood readily consented to do so, and the contract of November 1, 1926, which has been introduced in evidence, was executed."

On cross-examination he testified: "When the second deed of trust for $7,000.00 was made on the property, Ben Wood's notes were used as collateral to our own note on which we borrowed this money from the First and Merchants National Bank, and reimbursed our accounts with it."

The contract referred to by Richeson (which had been introduced by the plaintiff) is the contract in pursuance of which Wood paid the defendants the $460.00 for which he sues. It is dated November 1, 1926, is signed, sealed and acknowledged by Ben Wood, and is signed and sealed by each of the defendants. The material part of it reads:

"Whereas, the said H. T. Richeson and Company has procured for the said Ben Wood two loans of $10,000.00

and $7,000.00, respectively, on property located at the southeast corner of Thirty-fourth and Leigh streets, and in consideration of this service and a further consideration of $1.00 to him in hand paid, receipt whereof is hereby acknowledged, the said Ben Wood hereby agrees that the said H. T. Richeson and Company is to be the exclusive sale agents for this property for the term of ten years from November 1, 1926, and in the event of a sale of this property, or any part thereof, they are to receive the usual prevailing real estate commissions at the time of such sale, whether the property be sold by the said H. T. Richeson and Company, the said Ben Wood, or through any other agency."

Wood introduced no evidence as to the circumstances leading up to the making of this contract, nor did he testify as to what was the consideration for which he executed it. But Robert C. Bayliss, one of the defendants, testifies on this point as follows: "It was explained to Ben Wood that the amount of trouble and bother we had been to in assisting him in these matters justified us in asking him for this contract, and Wood stated that on account of the way we had assisted him, he felt that we were perfectly justified in asking it, and he then signed the contract."

The parts of the testimony of Frank S. Richeson, hereafter quoted, which were excluded or struck out by the court, also relate to these points.

In June, 1929, Wood made a contract to sell to Lynbrook Realty Corporation a part of the property above mentioned. The real consideration for the sale was the conveyance by it to Wood of certain other real estate. This sale (or exchange) was procured for Wood by a real estate agent who had no connection with the defendants; and the defendants rendered no service in connection therewith.

Wood employed Norman L. Flippen, an attorney at law, to represent him in closing this deal with Lynbrook Realty Corporation; and Flippen called on the defendants with

reference to paying off the $7,000.00 second lien deed of trust, and securing a release thereof. He saw H. T. Richeson who informed him "that he would be glad to allow Ben Wood to pay his notes, which had not matured, without paying a premium, * * * that he had had enough trouble with Ben Wood, and all he wanted was their money." The defendants, however, claimed to be entitled to commissions on the sale to Lynbrook Realty Corporation by virtue of the agency contract of November 1, 1926. Flippen, a witnesss for Wood, testifies that in considering this claim: "Mr. H. T. Richeson and himself agreed that * * * the exchange price of the Ben Wood property was not its true value, and in arriving at the amount of commissions due under the contract of November 1, 1926, they finally settled on the amount of commissions due on this particular sale" as $460.00; and that he advised Wood to pay this sum, so that he could close the deal with Lynbrook Realty Corporation, and then contest the matter. There is no evidence tending to show that the defendants knew of the advice given Wood by Flippen, or that Wood was contending that the sale-agency contract was tainted with usury.

On June 17, 1929, within one year before this suit was brought, Wood paid to the defendants the "principal of second mortgage $7,000.00, accrued interest to June 17, 1929, $54.84, (and) brokerage on sale of stores to Lynbrook Realty Company, $460.00." He also introduced in evidence the principal note for $7,000.00 and three of the notes given for the interest thereon, each of which is marked "paid, H. T. Richeson and Company."

During his direct examination Frank S. Richeson was asked the following question, which the court refused to permit him to answer:

"Q. State if there was any consideration for the contract of November 1, 1926, other than that shown on the face of the instrument, and if so, state it."

Examined out of the presence of the jury the witness stated that his answer to this question would have been as follows:

"Ben Wood had stated to us that it was impossible for him to secure this loan from any other source, and as we had made these advances to him was one reason for us asking him to give us the exclusive sale right of the property. Prior to the time (of) securing this loan, he had had considerable trouble with the city in regard to the openings to this filling station, which the city refused to grant him. We assisted him in carrying the matter through all of the courts, and finally, after several conferences with the director of public works, the director of public safety, and the mayor, we succeeded in having them grant him the privilege of entering on a residential street, which was prohibited by the city ordinance, as this property was zoned for residential and not business. We made no charge for these services. When we asked Wood for this agreement, he readily gave same, stating that he would not know what he would have possibly done, if we had not assisted him in securing this second mortgage. At the time this loan was made, the prevailing brokerage rate on second mortgage loans was five per cent per annum, while we only charged him five per cent for three years."

During his direct examination Frank S. Richeson also gave the following testimony, which the court on the motion of the plaintiff struck out:

"We made *bona fide* efforts to find a purchaser for the property mentioned in the contract of November 1, 1926, and opened up negotiations with the Standard Oil Company, and succeeded in having them send an officer from New York to inspect the property with a view of buying. Before the contract of November 1, 1926, was made, and after that time, my firm expended and paid all of Mr. Wood's bills for work done and materials furnished for the building.

The contract of November 1, 1926, was not demanded as a consideration for the loan. My father, Mr. H. T. Richeson, a member of the firm, called Wood into his office and after telling him of all the trouble we had been to in connection with this filling station, said he thought it was only fair that we should be given the exclusive sale of same."

The defendants asked the court to give four instructions, designated as B, C, D and E, all of which were refused by the court.

Instruction B, in effect, submitted to the jury the question, was the sale-agency contract of November 1, 1926, tainted with usury?

Instruction C, in effect, instructed the jury that the sales contract of November 1, 1926, was not tainted with usury; and that the plaintiff was not entitled to recover the $460.00 commission paid by him to the defendants in pursuance thereof.

We understand the defendants in their argument to abandon their contention that the court erred in refusing instruction D, and we shall not notice it further.

Instruction E reads as follows: "The court further instructs the jury that if they believe from the evidence that the plaintiff, who was represented by an attorney, and the defendants agreed to a settlement of the amount due under the sales contract and that the plaintiff paid the sum agreed to, then the matter was settled and the jury must find for the defendants."

The court refused to give any of the instructions asked for either by the plaintiff or the defendants, and gave its own instruction, the only instruction given, which reads as follows: "The court instructs the jury that under the laws of this State the contract between the plaintiff and the defendants, dated November 1, 1926, is usurious and the jury should find for the plaintiff, for such sum as may be

shown by the evidence the plaintiff paid to defendants by virtue of the said contract."

The jury returned a verdict for the plaintiff for $460.00, upon which verdict the court entered judgment.

The first assignment of error is that the court erred in not permitting Frank S. Richeson to answer the questions above quoted. The second assignment of error is that the court erred in striking out that part of Frank S. Richeson's testimony which it struck out.

The evidence excluded by the court by both of these rulings was admissible evidence; but the court did not commit reversible error by either of these rulings for the reasons given hereafter in discussing the fourth assignment of error.

■ Where the consideration for a written contract is mentioned therein merely by way of recital and is not a contractual term of the contract, the general rule is that the true consideration for the contract may be shown by either party by extrinsic evidence, although it is different from that expressed. This is a well recognized exception to the parol evidence rule. Jones Com. on Ev., section 1561, section 1562; 5 Wigmore on Ev., section 2433. The evidence excluded by the court was admissible under this rule; but it is admissible also upon a much broader principle.

■■ The parol evidence rule has no application to prevent the introduction of extrinsic evidence to prove that a written contract, legal on its face, was in fact made for an illegal consideration, or was otherwise illegal in its inception. In such a case the proof offered goes to show that the written contract is, in whole or in part, without legal force, and not to vary or contradict the terms of a legal contract. Where the contract is illegal in its inception "the parol agreement cannot be said to be merged in the pretended written agreement, for it is only by virtue of its superior obligation that a written contract has the effect of

extinguishing the verbal contract upon which it is founded; and, of course, when it has no obligation, it can have no such effect." Jones Com. on Ev., section 1522, section 1563, and also section 1511, section 1561, section 1562 and section 1564; 39 Cyc. (usury), page 957; 5 Wigmore on Ev., section 2439 (b), pages 326–327; *Lear* v. *Yarnel*, 3 A. K. Marshall (Ky.), 419.

■ The exclusive sale-agency contract, dated November 1, 1926, is not usurious on its face.[1] 39 Cyc. (usury), page 979; *Keagy* v. *Trout*, 85 Va. 390, 7 S. E. 329; 21 A. L. R. (note), page 823; 53 A. L. R. (note), page 751.

■ An usurious contract is illegal in its inception. The borrower may, therefore, always prove by extrinsic evidence that the contract, though legal on its face, was in fact made for an usurious consideration. This is true, though the written contract may be a sealed instrument which on its face is complete, states a legal consideration, and shows no appearance of usury; and though such extrinsic evidence may vary, add to, or contradict the written instrument. This, the rule at common law, has been made statutory in Virginia. Code section 5554; 39 Cyc. (usury), pages 957, 1052; 27 R. C. L. (usury), section 13, page 212; *Campbell* v. *Shields*, 6 Leigh (33 Va.), 517; *Brockenbrough's Ex'rs* v. *Spindle's Adm'rs*, 17 Gratt. (58 Va.), 21; *Ware* v. *Bankers' Loan, etc., Co.*, 95 Va. 680, 29 S. E. 744, 64 Am. St. Rep. 826.

■ For this purpose all evidence relevant and material to show the real consideration for which the contract was made is admissible, including evidence showing the facts and circumstances leading up to, connected with and attending the making of the contract, the acts done in pursuance thereof, and, where relevant, the agreements collateral thereto.

---

[1] For a case in which there were peculiar circumstances under which a brokerage charge for a loan procured from a third person was held to constitute usury, see *Roanoke Mortgage Co.* v. *Henritze*, 151 Va. 220, 144 S. E. 430.

■ When, however, the borrower has alleged and introduced evidence tending to prove that a written contract, legal on its face,[2] was in fact illegal in its inception, because executed by him for an usurious consideration, upon that issue, the lender, or other party seeking to support the legality of the contract, may, without violating the parol evidence rule, introduce any competent extrinsic evidence, which is relevant and material to show that the contract was in fact executed for a legal consideration. And this is true though such evidence may tend to vary or contradict the terms of or recitals in the written instrument, or tend to prove a consideration different from either that expressed in the contract, or alleged by the borrower.

There is some authority to the contrary,[3] and some of the authorities seem to limit the admission of extrinsic evidence offered by the party seeking to support the contract to evidence not contradictory of the writing.[3] But the rule above stated is supported upon principle and by the better reasoning, and by the authorities cited in the footnote;[4] and in a rather wide, though probably far from exhaustive, search we have found no case in which on the

[2] For cases where contract in question was illegal on its face, see 22 C. J. (Evidence), section 1703, page 1278. But see, also, Browne on Parol Ev., section 36, page 64.

[3] 22 C. J. (Evidence), page 1278, note 44; Jones Com. on Ev., section 1570.

[4] 39 Cyc. (usury), 1053-1054; Jones Com. on Ev., section 1522, page 2778, section 1563, page 2861, and section 1570; Wharton on Parol Ev. (3 ed.) section 1046 and section 1048 (dealing particularly with illegality because of fraud); 22 C. J. (evidence), section 1702, pages 1277-1278; 4 Thompson on Real Prop., section 3044, page 128; Browne on Parol Ev., section 36, page 64; 5 Wigmore on Ev., section 2439 (b), pages 326-327; *Huntsman* v. *Longwell* (C. C. A.), 4 F. (2 ed.) 105 (usury); *Andrews* v. *Pond,* 13 Pet. (U. S.) 65, 10 L. Ed. 61 (usury); *Campbell* v. *Shields,* 6 Leigh (33 Va.) 517 (usury); *Porterfield* v. *Coiner,* 4 Gratt. (45 Va.) 55, (usury); *Leach* v. *Shelby,* 58 Miss. 681, 689 (fraud); *Wimberly* v. *Wortham* (Miss.), 3 So. 459 (fraud); *Chiles* v. *Coleman,* 2 A. K. Marsh. (Ky.) 296, 12 Am. Dec. 396 (gaming); *Warren Refining, etc., Co.* v. *Dyer,* 101 W. Va. 452, 132 S. E. 877, (fraud). See, also, *McConnell* v. *Gregory,* 146 Ga. 475, 91 S. E. 550 (usury); *Thurston* v. *Cornell,* 38 N. Y. 281 (usury); *Jones* v. *Cannady,* 15 N. C. 86 (usury). As noted, some of these authorities relate to contracts illegal for causes other than usury, but the underlying principles involved are the same.

issue of usury extrinsic evidence offered by the party to support the legality of a contract, legal or illegal, has been rejected because it tended to contradict the written instrument.

Where the contract is legal on its face, the issue on a plea of usury is, what is the true consideration—not what is the consideration stated in the contract. "The truth is then the proper object of the investigation, and both parties should stand on the same footing, and have an equal opportunity to establish it." (Jones Com. on Ev., section 1570.)

It would be inconsistent to admit extrinsic evidence to prevent wrong by showing that the contract, though legal on its face, was in fact made for an illegal consideration different from that expressed in the instrument, and yet prevent the law from effecting the right by excluding such evidence when offered in rebutal to show that the contract was in fact legal. (Browne on Parol Ev., section 36, page 65.) To do so would be to deny to the party seeking to support the contract the full opportunity, to which he is in justice entitled, to rebut the extrinsic evidence offered by the borrower to contradict the written instrument.

Where the contract is legal on its face, the borrower by his plea of usury necessarily asserts that the written instrument is not a true memorial of the consideration for which he executed the contract. This he is permitted to do whether the consideration be therein stated by way of recital or as a contractual term. The law at his behest sets aside, for the purposes of that issue, the sanctity given by law to the written memorial, upon which alone the parol evidence rule rests for its application. When the basis for its application has been removed, the rule becomes inapplicable. The recitals in, or terms of, the written instrument relating to the consideration then lose any character they may have as an exclusive memorial of the

consideration, and become merely evidence relevant to the issue, what was the true consideration.

■ When the borrower has introduced extrinsic evidence which makes out a *prima facie* case of usury, he has, until this evidence is rebutted, established that the contract is an illegal agreement, and, therefore, lacks the superior authority to merge a prior, or contemporaneous, oral agreement in the written memorial thereof. Then, until the party seeking to support the contract has rebutted this evidence and proven that the true consideration for the contract was a legal consideration, the parol evidence rule is inapplicable. As the case then stands there appears to be no legal written agreement which by virtue of its superior authority may have the effect of extinguishing the prior, or contemporaneous, oral agreement upon which it is founded. (See *ante*, where the rationale upon which the borrower is permitted to introduce extrinsic evidence is discussed.)

■ The rule above announced is also consonant with the rule that where one party has been permitted to introduce extrinsic evidence of the facts and circumstances leading up to and connected with the execution of a written contract, the other party may introduce evidence as to the same matters, notwithstanding that the evidence offered by him tends to vary or contradict the writing. 22 C. J. (evidence), page 1295, and cases there cited in note 96.

What has been said above relates to the admissibility of extrinsic evidence upon the issue of the legality or illegality of the written agreement. We are not here concerned with, or considering, to what extent evidence admissible upon that issue may be considered upon other issues in the case.

The question whether the court committed reversible error in excluding this evidence is so intimately connected with the first question raised by the fourth assignment of error that we shall discuss them together.

The fourth assignment of error is that the court erred in instructing the jury (1) that the sale-agency contract of November 1, 1926, was usurious, and (2) that it should find for the plaintiff such sums as the evidence shows he paid to the defendants in pursuance thereof.

█ █ The evidence introduced by the defendants proves that the $7,000.00 loan was not a loan procured by them for Wood, but a loan made by them to him; and that the five per cent brokerage charged him was an usurious exaction. Though Frank S. Richeson does testify that "the funds loaned Mr. Wood were not my (our) money," his own evidence shows conclusively that the $7,000.00 lent to Wood was money belonging to the defendants or money with which they were dealing as their own. It is true that they either borrowed the money which they lent Wood from the First and Merchants National Bank on their note secured by Wood's note as collateral, or subsequently borrowed from that bank on their note, secured by Wood's note as collateral, an equal amount. But neither of these facts is sufficient to make this a loan by the bank to Wood. *Sanford* v. *Kane,* 133 Ill. 199, 24 N. E. 414, 8 L. R. A. 724, 23 Am. St. Rep. 602; *Rantala* v. *Haish,* 132 Minn. 323, 156 N. W. 666; *Sayles* v. *Jackson* (Tex. Civ. App.), 254 S. W. 218.

█ The evidence (even if the excluded evidence be included) is wholly insufficient to show that the loan made by the bank was in any sense made as a loan to Wood; or any agreement expressed, or implied, or that it was intended, or contemplated, by the parties that the loan to Wood should be other than a loan made by the defendants to Wood. It is all to the contrary, and shows rather that the so-called $7,000.00 was a forbearance for three years of that amount formerly lent Wood by the defendants. But it is immaterial whether it be treated as a forbearance of money theretofore lent, or a new loan, and we shall speak of it as a loan.

The sale-agency contract of November 1, 1926, recites that a part of the consideration for which it was executed was the procuring by the defendants of the $7,000.00 loan. Though the loan was proven to have been made by the defendants instead of procured by them, the recital in this contract, though subject to contradiction, remains strong and cogent evidence that the making of this loan was a material part of the consideration for which Wood executed it. It establishes that fact until the contrary be proven by clear and convincing evidence, constituting a clear and satisfactory preponderance of the evidence on that point. 23 C. J. (evidence), page 26. Neither the evidence admitted, nor that excluded, contains any evidence sufficient to overcome the recital in the contract that the making of the $7,000.00 loan was a part of the consideration therefor, and to support a finding that it was not.

The most that can be said of the evidence (including that excluded or struck out by the court) is that it tends to prove, or perhaps proves, that in addition to the consideration recited in the contract, there were other considerations to Wood for the execution of the contract, which other considerations were legal considerations. It is true that in his testimony which was struck out Richeson says: "The contract of November 1, 1926, was not demanded as a consideration for the loan;" but this is not the question. The question is, was the making of this loan a part of the consideration for which the contract was executed?

When all the evidence (including that excluded and struck out by the court) is read together, the only conclusions which can be reasonably reached are that a very material part of the consideration for which the agency contract was executed was the making of the $7,000.00 loan; that the loan contract and the agency contract were parts of one transaction; and that, therefore, one of the considerations for the making of the loan was the execution of the agency contract.

The taking of this ten year exclusive sale-agency contract as a consideration for the loan, or forbearance, for three years of the $7,000.00 (in addition to six per cent interest thereon), constituted the taking of above the value of six per centum per annum for the loan or forbearance of this money; and rendered the sale-agency contract usurious. Section 5551, Code Va. 1919; *Carter* v. *Hook*, 116 Va. 812, 83 S. E. 386.

While the sale-agency contract is supported by several considerations, only one of which is tainted with usury, it is not so severable that any part thereof can be assigned to the usurious consideration, and the other part to the legal considerations. Therefore, the whole contract is subject to such consequences as the statute attaches to usury. 39 Cyc. (usury), page 989, and cases cited in note 17.

Whether a contract is usurious or not is generally a question of fact for the jury. But where there is no material conflict in the evidence, and only one conclusion can reasonably be drawn from the facts proven, usury becomes a question of law for the court. *Brockenbrough's Ex'rs* v. *Spindle's Adm'rs*, 17 Gratt. (58 Va.) 21; *Rantala* v. *Haish*, 132 Minn. 323, 156 N. W. 666.

There was no material conflict in the evidence admitted by the court, and the only conclusion that can be reasonably drawn from the facts proven is that a part of the consideration for which the sale-agency contract was executed was tainted with usury. This would still have been true, if the court had admitted the testimony which it excluded. Therefore, the court did not commit reversible error in excluding the testimony which it refused to admit or struck out; and did not err in instructing the jury that the sale-agency contract was usurious.

This conclusion disposes of the assignments of error based upon the court's refusal to give defendants' instructions B and C.

The next assignment of error is that the court erred in refusing to give defendants' instruction E, which presents the same question which is presented by the second phase of the fourth assignment of error.

The only evidence in the record to sustain instruction E is the testimony of Norman L. Flippen above quoted. This evidence is not sufficient to support a finding that there was any compromise of the claim of Wood, that the contract was usurious, and that he was entitled to recover back any sums paid by him under the contract. Only one question is shown to have been compromised, that is, what was the amount which the usurious contract provided Wood should pay to the defendants upon the sale (or exchange) of the part of the property sold Lynbrook Realty Corporation through an agent other than the defendants? This was fixed at $460.00 and paid by Wood. In paying this sum Wood, at most, made a voluntary payment of usurious interest.

The court did not err in refusing to give instruction E, nor, in view of the evidence in this case, in instructing the jury that Wood was entitled to recover any sums which the evidence showed that he had paid to the defendants under the contract in question.

"The rule that where a contract for an illegal consideration has been voluntarily performed, a party who had paid money under it cannot recover it back, has no applicability to usurious transactions." *Meem* v. *Dulaney*, 88 Va. 674, 14 S. E. 363, 365; *Moseley* v. *Brown*, 76 Va. 419, 425.

What has been already said disposes of the last assignment of error, which is, that the court erred in refusing to set aside the verdict.

*Affirmed.*