Present: All the Justices

R.K. CHEVROLET, INC.

v. Record No. 971907     OPINION BY JUSTICE ELIZABETH B. LACY
                                      June 5, 1998
BANK OF THE COMMONWEALTH

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge

In this appeal, we consider whether the trial court properly awarded damages against an automobile dealership for breaching its agreement with a lender by incorrectly titling a motor vehicle.

In July 1995, John H. Kauffman and Janice S. Carter purchased a 1995 Chevrolet Camaro Z-28 from R.K. Chevrolet, Inc. (RK). To finance the purchase, Kauffman obtained a loan in the amount of $24,398.87 from the Bank of the Commonwealth (the Bank). As a part of the loan transaction, the Bank required that the Camaro be titled in Kauffman's name and that a first lien in the Bank's favor be recorded on the certificate of title. The Bank issued a check for the purchase price of the car, showing Kauffman and RK as payees. The reverse side of the check contained a legend reciting the obligation of the payees.[1] Kauffman and RK endorsed the check;

_____

[1] The legend read as follows: "The endorsement of this check by the payee constitutes an obligation to the Bank of the Commonwealth that the payee will record a first lien in favor of the Bank of the Commonwealth, on one 1995 Chevrolet Z-28 Camaro Identification No. 2G1FP22PXS2151739 Title in the Name of John H. Kauffman In the amount of $23,828.00 Secured by a Security Agreement Dated July 25, 1995."

however, the car was titled in the name of Janice Carter, not Kauffman.

Approximately one year later, the Bank discovered the titling error and contacted RK and Carter. Although both the Bank and RK tried to convince Carter to re-execute the title to the Camaro and add Kauffman's name, she refused.

The Bank filed this action on September 24, 1996, alleging that RK and Kauffman breached their contractual obligations to the Bank by failing to properly title and secure the Bank's lien on the Camaro.[2] The trial court entered judgment in favor of the Bank, imposing joint and several liability on RK and Kauffman in the amount of $19,131.75 plus interest.

RK appeals the trial court's judgment on three grounds. First, RK asserts that even though it breached its contractual duties to the Bank, the Bank sustained no damages as a result of RK's breach. Any damages suffered by the Bank, RK claims, were caused by Kauffman's failure to make payments on his loan.[3] We disagree.

---

[2] Kauffman filed a cross-claim against RK, and RK filed an amended third-party motion for judgment against Carter. Neither of these claims is at issue in this appeal.

[3] At the time the suit was filed, the Bank had notified Kauffman that some payments were late, but had not declared the loan in default. At trial in May 1997, the Bank's evidence showed that the loan payments were paid through February 1997.

When a motor vehicle dealer breaches its contractual warranty with a lender by not properly titling a vehicle, the lender is damaged because it loses its security for the loan. United Virginia Bank of Fairfax v. Dick Herriman Ford, Inc., 215 Va. 373, 375, 210 S.E.2d 158, 161 (1974). The amount of the lender's recovery is limited to the lesser of the value of the vehicle at the time of the breach and the amount of the intended lien. The lender's recovery is also diminished by any loan payments actually received. Id. at 375-76, 210 S.E.2d at 161.

Here, like the dealer in Dick Herriman Ford, RK breached its contract with the Bank. While the record is not clear as to the precise calculations made by the trial court in reaching the damage amount, it does show that the amount of the intended lien was $23,828.00 and that the value of the collateral at the time of purchase was $24,289.45.[4] RK does not dispute the Bank's representations that the trial court decreased the award by the loan payments received by the Bank.

RK seeks to distinguish Dick Herriman Ford by asserting that in that case, the bank suffered "actual damages as a direct proximate result" of the dealership's breach because the borrower stopped making payments on the loan and took the vehicle out of the state. This factual distinction is not

material to the holding in <u>Dick Herriman Ford</u>. In both cases, the vehicle was mistitled and the lenders could not enforce their liens, regardless of the location of the vehicles or the status of the loan payments. The injury suffered was the loss of the collateral for the loan, not the failure to make payments on the loan or the location of the vehicle.

RK next asserts that, even if the Bank were entitled to damages, the trial court erred in granting the Bank a "full monetary judgment" because the Bank failed to mitigate its damages. In support of this claim, RK refers to evidence of the Bank's contacts with Carter through its collection manager and the Bank's release of its lien on a duplicate title issued for the Camaro. The Bank responds that the evidence showed that its collection manager tried to convince Carter to re-execute the title and add Kauffman's name, that Carter testified she was not going to sign any documents changing the title to the Camaro, that RK requested and handled the paperwork on the duplicate title, and that even though the original title reflected a lien in favor of the Bank, the Bank had no legal interest in the Camaro.

Mitigation of damages is an affirmative defense for which RK bears the burden of proof. <u>Marefield Meadows, Inc. v. Lorenz</u>, 245 Va. 255, 266, 427 S.E.2d 363, 369 (1993); <u>Foreman</u>

---

[4] The purchase price as shown on the title application is conclusive evidence of the vehicle's value. <u>Dick Herriman</u>

4

<u>v. E. Caligari & Co., Inc.</u>, 204 Va. 284, 289-90, 130 S.E.2d 447, 451 (1963).  Whether RK has satisfied its burden of showing that the Bank failed to mitigate its damages is a factual determination based on the evidence produced.  Considering this record, we cannot say that the trial court erred in failing to find that the Bank did not mitigate its damages.

Finally, RK argues that the award against it includes amounts attributable to late fees, interest, and collection costs of $674.62 which should have been assessed against Kauffman only.[5]  Because, as we noted above, the record does not show how the award was calculated, the record is insufficient to address this claim.

For the above reasons, we will affirm the judgment of the trial court.

<u>Affirmed.</u>

---

<u>Ford</u>, 215 Va. at 376, 21 S.E.2d at 161.

[5] RK apparently bases this amount on a past due notice sent Kauffman which was introduced as an exhibit.  That notice, however, shows late charges of only $180.63 and the loan amount past due as $493.99, for a total amount due of $674.62.