PRESENT: All the Justices

LAWRENCE J. MONAHAN

Record Number 051592                           OPINION BY
v.                                      JUSTICE G. STEVEN AGEE
                                            April 21, 2006

OBICI MEDICAL MANAGEMENT SERVICES, INC.

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Rodham T. Delk, Jr., Judge

The Circuit Court of the City of Suffolk entered judgment
on a jury verdict in favor of Lawrence J. Monahan in his medical
malpractice action against Obici Medical Management Services,
Inc. ("Obici") and awarding him damages in the amount of
$215,000. Monahan appeals from the trial court's decisions to
instruct the jury on mitigation of damages and to deny his
motion to strike certain evidence related to the issue of
mitigation. He requests a new trial as to damages only. For
the reasons set forth below, we will affirm the judgment of the
trial court in part, and reverse in part.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

On the morning of Tuesday, August 28, 2001, Monahan, a
construction subcontractor,[1] was working on a construction
project when he informed his supervisor, Johnnie Presson, that
he felt unwell and had double vision. Presson noticed that
Monahan "wasn't moving quite right" and contacted Monahan's

_____
[1] Monahan was employed full-time as a subcontractor with
Rickmond General Contracting, a general contractor.

wife.  He had a co-worker drive Monahan to Wakefield Medical Center[2] ("Wakefield") for a medical evaluation.[3]

When Monahan arrived at Wakefield, the office was closed for lunch, but the receptionist admitted Monahan into the clinic building after observing that he was unusually "hot and sweaty." Anita Curl, the practice manager, escorted Monahan to an examination room.  She testified that Monahan appeared "hot and tired," and that he was walking "slow" and "unsteady."  Barbara P. Carr, a licensed practical nurse, took Monahan's vital signs and recorded his blood pressure to be "200 over 95."  Carr also noted that Monahan felt dizzy and had double vision.

Carrie Wiggins, a nurse practitioner at Wakefield, examined Monahan about 1:00 p.m.  Wiggins checked Monahan's chart, retook his blood pressure twice, and performed a quick neurologic exam, which she determined was normal.  She concluded that Monahan was having a hypertension crisis and gave him some samples of Micardis (a blood pressure medication[4]).  Wiggins testified that she told Monahan to rest through Friday, August 31, 2001, scheduled him to return in two weeks to have his blood pressure

---

[2] Wakefield is owned and operated by Obici.  Carrie Wiggins, the nurse practitioner who examined Monahan, was an employee of Wakefield and, thus, Obici.  At trial, Obici stipulated that Wiggins was one of its employees.
[3] Monahan had been a patient at Wakefield for many years.
[4] Monahan had a history of high blood pressure.

2

checked, and wrote in his medical chart that if his condition did not improve Monahan "should come back the next day."

Monahan then left Wakefield and walked to the adjacent pharmacy. Curl observed Monahan at the pharmacy and stated that he appeared "very sick and was walking to the front, walking like somebody that was drunk and dizzy." She returned to Wakefield and informed Wiggins, who went outside and found Monahan leaning against the building and again discussed his condition with him. She then prescribed Meclizine for Monahan's dizziness.

There was considerable conflict in the evidence as to what Wiggins advised Monahan to do during their discussion of his condition at Wakefield. Obici contends that Wiggins advised Monahan that his high blood pressure could lead to a stroke and that he should go to the emergency room at a hospital. When Monahan did not respond to her, Wiggins assumed from his silence that he was refusing to go to the emergency room. Monahan maintained that Wiggins never told him that he needed to go to the emergency room and never mentioned the possibility of him having a stroke.

Wiggins testified on direct examination:

I was really concerned about his blood pressure being elevated.
And I said, [b]ecause your blood pressure is elevated, that could mean several things. It could mean that you might be having a stroke. So you really

3

need to go to the emergency room for further evaluation.

. . . .

His response was nothing. He didn't say anything at that particular time.

Wiggins then testified that she reiterated her advice that Monahan go to the emergency room when she talked with him outside the pharmacy:

[W]hen I realized that he was dizzy, I sat out there with him on the side of the pharmacy and said, Mr. Monahan, I'm really, really concerned about you. I said, I saw you when you were walking, and I feel like you need to go to the emergency room.
And he kept saying, Well, I just called my wife, and she's going to be at home probably by the time I get there.

However, on cross examination, Wiggins testified that her advice to Monahan was given in the form of alternatives, that either he could go to the emergency room or go home and rest to see if his condition changed.

Q [Monahan's Counsel:] So you gave him the option of either going to the emergency department or telling his wife to take him to the emergency department . . . if there's any change in the least? . . . [I]sn't that what you told him?

A [Wiggins:] Yes.

. . . .

Q[:] And in response to you saying to him either go to the emergency department or go home, lay down, and tell your wife to take you to the emergency department if you have any change, he said okay, didn't he?

A[:] He said okay.

4

Q[:]  And when you gave him the option of going home, laying down, and telling his wife to take him to the emergency department if there was any change in him in the least, that, you believe, was one option for his treatment at that time, correct?

A[:]  Not for his treatment, definitely not for his treatment, but to make sure that he got to the emergency room.

Q[:]  Right.  But that was one alternative you gave him?

A[:]  That was one alternative I gave him.

Monahan's medical chart at Wakefield for August 28, 2001 contained the written statement "Refused to go to ER now," but no other entry regarding any discussion between Wiggins and Monahan on the need to go to an emergency room.

At some time after 1:00 pm, Wakefield's receptionist telephoned Sandra Rickmond, the wife of Monahan's boss Richard E. Rickmond, and advised her that Monahan was ready to leave the facility.  According to Mrs. Rickmond, that is all anyone from Wakefield told her.

Mrs. Rickmond then went to Wakefield and drove Monahan to his home.  On the drive home, Monahan complained of dizziness and double vision.  Upon arriving at his home, Monahan went to bed.

Mrs. Monahan testified that when she arrived home, her husband said that Wiggins told him to go home, get in bed, and

5

return on Friday.  Mrs. Monahan left the bedroom briefly, and when she returned, Monahan had fallen out of bed.  After failing to reach anyone at Wakefield on the telephone, Mrs. Monahan decided to drive her husband to Riverside Hospital in Newport News.  En route to the hospital, Mrs. Monahan telephoned Wakefield again and spoke to Curl.  She informed Curl that she was driving her husband to Riverside.  Curl testified that she encouraged Mrs. Monahan to drive her husband to the Smithfield rescue squad for transport to a hospital.  Their conversation ended abruptly apparently due to a disruption in the cellular telephone service.

The Monahans arrived at Riverside at approximately 3:00 p.m. and Monahan was diagnosed as having suffered a stroke.[5]  One of Monahan's rehabilitation physicians, Dr. Mark A. Ross, testified that as a result of the stroke, Monahan had incurred permanent problems with his speech, vision, movement and mobility, and balance.  Ross further testified that Monahan needed "ongoing medical management" to prevent future strokes and "can't be left alone for long periods of time and be counted on to tend to his own needs properly."  A vocational specialist testified that the stroke had left Monahan "unable to perform

---

[5] The exact time the stroke occurred is unknown because it was a "stroke in evolution" in that it "progresses – it starts, and it goes on for a few hours."  One of Monahan's expert witnesses testified that it most likely occurred "while [Monahan] was being transported to Riverside."

. . . gainful, competitive employment" because of his "difficulty with walking, his balance difficulties, his communication impairments, and his fatigue."

Monahan filed a motion for judgment, which he later amended, against Obici alleging Obici failed to provide adequate medical care to him on August 28, 2001, and that he suffered a stroke as a result of Obici's negligent treatment.[6]  Monahan asserted Obici deviated from established standards of care because Wiggins failed to properly diagnose Monahan's condition and ensure that he received the immediate emergency room care that he needed to prevent or lessen the effect of a stroke. Monahan requested damages in the amount of $1,600,000.  Neither Obici's grounds of defense nor its amended grounds of defense raised Monahan's failure to mitigate damages as a defense. Apart from denying the allegations alleged in Monahan's Motion for Judgment, Obici pled the affirmative defenses of contributory negligence and assumption of the risk.

After the parties had presented their evidence to the jury, Monahan moved the trial court to "instruct the jury to disregard" the evidence concerning Mrs. Monahan's actions in transporting her husband to Riverside Hospital rather than a

---

[6] Monahan also named Wiggins as a party defendant, but later took a nonsuit as to her.  Wiggins is thus not a party to this appeal.

closer hospital.[7]  Obici cross-examined Mrs. Monahan regarding her decision to drive her husband to Riverside Hospital even though it was "farther away" than two other emergency room facilities.  Mrs. Monahan admitted driving to Riverside even though it was "[n]ot quite 20 [minutes further away,] but I knew it was a little further" than [Obici].  Mrs. Monahan also acknowledged that she elected not to stop at "a rescue squad along the way in Smithfield."

Obici also questioned Dr. J. Gordon Burch, one of Monahan's expert witnesses, regarding the time it took for Mrs. Monahan to drive to Riverside.  The cross-examination of Dr. Burch contains the following colloquy:

> Q [Obici's counsel:]  [Y]ou've read that [Ms. Monahan] could have gotten [Monahan] to Obici in 30 minutes, and she took him to Riverside, and it took about 50 minutes; is that correct?

---

[7] This motion was only made orally, and Monahan did not elaborate as to what particular testimony he sought to strike.  Similarly, Monahan's brief does not indicate any specific testimony; instead, he claims "Obici failed to show that the decision to go to Riverside hospital, which was approximately 20 minutes farther away than another hospital, can be used against Plaintiff to minimize his damages."

Mrs. Monahan testified that she chose to take her husband to Riverside as opposed to other area hospitals because she worked as a medical transcriptionist at Riverside and "I knew all the doctors there, because I knew exactly where to go to the emergency room.  I knew the emergency room physicians.  I knew the emergency room nurses, the techs."  Obici did direct attention to that decision in its closing argument to the jury and the fact that may have delayed Monahan's access to emergency room treatment.

A [Dr. Burch:] Yes. I am aware of that. There's other testimony in the record that indicates that it might have been a harder trip to Obici because of lights and traffic and so on, and actually the time may have been very comparable. Riverside is the better hospital to go to because of their expertise in neurological medicine and general medicine. It's a major medical center.

Q[:] But it added at least 20 minutes beyond the drive to Obici to take him to Riverside?

A[:] I don't know the area well, and I don't dispute that, but I understand from the record that there's some difference of opinion as to the time it would take to get to both places.

Responding to Monahan's motion to instruct the jury, in effect a motion to strike, Obici contended that even though "[i]t's true that there isn't an expert that said by taking this patient to Riverside, that there was additional damage caused," the evidence was relevant because Monahan's theory of negligence was "predicated on the notion of timely presentation to an emergency department."

The trial court did not grant Monahan's motion and ruled

the act of Ms. Monahan in determining to take Mr. Monahan to Riverside Hospital for the reasons she said as opposed to Obici Hospital, that is – this is not causally connected in the sense of an act of negligence and some consequence . . . it is related to the issue of damages if that issue – if the jury gets [to] that issue.

Monahan also moved to exclude Obici's proposed mitigation of damages instruction on the grounds that Obici failed to plead mitigation of damages as an affirmative defense and there was

9

insufficient evidence for an instruction. The trial court overruled the motion finding that mitigation "is a duty on the part of every plaintiff, and I don't find that it's an affirmative defense." Over Monahan's objection, the trial court gave Obici's requested instruction to the jury: "The plaintiff has a duty to minimize his damages. If you find that the plaintiff did not act reasonably to minimize his damages and that, as a result, they increased, then he cannot recover the amount by which they increased."

The jury returned a verdict in favor of Monahan in the amount of $215,000. The trial court entered judgment approving the verdict by final order of April 15, 2005 to which Monahan objected on the basis of the mitigation instruction and the refusal to strike the testimony on the choice of hospital as proper evidence regarding mitigation of damages.

We awarded Monahan this appeal.

## II. ANALYSIS

Monahan's assignments of error raise three issues for our review. First, whether the trial court erred in finding that mitigation of damages was not an affirmative defense that must be specifically pled in order to be raised as a defense. Second, whether the trial court erred in denying Monahan's motion to strike the evidence that Monahan's wife chose to transport him to Riverside Hospital as opposed to a closer

hospital.  And third, whether the trial court erred in finding sufficient evidence existed to support a mitigation of damages instruction.  We consider each issue in turn.

## A.  Pleading Mitigation of Damages

Monahan contends that mitigation of damages cannot be raised as a defense unless it has been specifically pled by the defendant.  This is so, he asserts, because mitigation is an affirmative defense and "[i]t is axiomatic that an affirmative defense must be specifically pled, but also must be affirmatively pled."  Monahan cites no case law to support his contention, but references a treatise that states: "[t]here are numerous issues that the defendant must himself plead as affirmative defenses.  If he fails to raise these issues they are deemed to be waived."[8]  Monahan also argues that Rule 3:18(e)[9] "contemplates that affirmative defenses must be pled" because it states that they "may . . . be included in the same paper" as a defendant's grounds of defense, counterclaims, cross-claims, pleas, demurrers, and other motions.  Because Obici did not raise mitigation in its initial or amended Grounds of Defense, or in any other written pleading, Monahan avers "Obici failed to properly place the question of mitigation in

---

[8] W. Hamilton Bryson, Bryson on Civil Procedure § 6.03[8][a], at 6-40 to -41 (4th ed. 2005).

[9] Former Rule 3:16(f).

11

issue, and was not entitled to pursue it or obtain an instruction on it."

Obici responds by arguing that although Virginia case law identifies mitigation as an affirmative defense, it "has never mandated that mitigation of damages must be specifically pled." Obici contends that an affirmative defense such as mitigation of damages does not have to be specifically pled, but "may be forthcoming from the evidence adduced at trial."

Whether mitigation of damages must be specifically pled is an issue of first impression in Virginia. For the reasons that follow, we agree with Obici that mitigation of damages need not be specifically pled in order for a defendant to assert it, provided the issue has otherwise been shown by the evidence.

We have held on numerous occasions that mitigation of damages is an affirmative defense.[10] Forbes v. Rapp, 269 Va. 374, 380, 611 S.E.2d 592, 596 (2005) ("An assertion that an injured party has failed to mitigate damages is an affirmative defense"); see also R.K. Chevrolet v. Bank of the Commonwealth, 256 Va. 74, 77, 501 S.E.2d 769, 771 (1998); Marefield Meadows, Inc. v. Lorenz, 245 Va. 255, 266, 427 S.E.2d 363, 369 (1993);

---

[10] The trial court was incorrect when, in reference to mitigation, it opined, "I don't find that it's an affirmative defense." However, this ruling was harmless error as it did not affect the ultimate conclusion that a specific pleading of mitigation was not required. Blue Stone Land Co. v. Neff, 259 Va. 273, 279, 526 S.E.2d 517, 519-20 (2000).

12

Foreman v. E. Caligari & Co., 204 Va. 284, 290, 130 S.E.2d 447, 451 (1963). Consequently, the defendant bears the burden of proving that the plaintiff failed to mitigate his damages. R.K. Chevrolet, 256 Va. at 77, 501 S.E.2d at 771.

It has long been required that a party raise specific defenses (just as a plaintiff must give notice of claims) so that surprise and prejudice at trial from late revelation of unanticipated legal theories is avoided. See, e.g., Chesapeake & O. Ry. v. Osborne, 154 Va. 477, 506, 153 S.E. 865, 873 (1930) (filing of a grounds of defense by defendant "limited in its defenses to the ground there stated"); see also City Gas Co. v. Poudre, 113 Va. 224, 226, 74 S.E. 158, 160 (1912) (purpose of requiring a grounds of defense is "to give the plaintiff reasonable notice of the particular defense upon which the defendant expects to rely, so that he may not be prejudiced by surprise"). This has generally led to a requirement that affirmative defenses must be pled in order to be relied upon at trial. See, e.g., Brooks v. Bankson, 248 Va. 197, 206, 445 S.E.2d 473, 478 (1994) (defense of fraud).

Exceptions to this general rule have been recognized in some factual contexts where the issue addressed by an affirmative defense was not disclosed in a plaintiff's pleading, and only became apparent as the evidence was being received at trial. In such instances, it has been held that an affirmative

13

defense issue is properly heard even though it was not pled. See, e.g., Lawson v. States Constr. Co., 193 Va. 513, 521, 69 S.E.2d 450, 455 (1952) (statute of frauds); McKee v. McKee, 206 Va. 527, 532, 145 S.E.2d 163, 166 (1965) (condonation); Franklin Jewelry Co. v. Masch, 160 Va. 756, 764-65, 169 S.E. 583, 584 (1933) (ultra vires); see also Twardy v. Twardy, 14 Va. App. 651, 656-57, 419 S.E.2d 848, 851 (1992) (estoppel need not have been pled because "nothing of record suggested that the issue of estoppel would be involved" until later in the proceedings).

Other affirmative defenses have been addressed by statute, which either obviate the need for pleading, or expressly require that a particular defense be pled. Compare Roanoke Mtg. Co. v. Henritze, 151 Va. 220, 225, 144 S.E. 430, 431 (1928) (under prior law, usury shown on the face of the contract precluded recovery of interest, even if not pled), with, e.g., Jones v. Jones, 249 Va. 565, 571-72, 457 S.E.2d 365, 369 (1995) (under Code § 8.01-235 an affirmative defense of the statute of limitations must be specifically pled: "[t]he objection that an action is not commenced within the limitation period prescribed by law can only be raised as an affirmative defense specifically set forth in responsive pleading").

It is generally true that mitigation of damages, like other defenses, is routinely and properly raised in a defendant's pleadings. However, the requirements for raising mitigation of

14

damages in a pleading have not been addressed by statute, and no prior case law has affirmatively noted that failure to plead this particular defense waives the right to rely on such proof at trial.

While our prior cases have not directly addressed the pleading of mitigation, our decision in Chappell v. Smith, 208 Va. 272, 156 S.E.2d 572 (1967), is instructive on the issue before us. Our decision in Chappell addresses what evidence a defendant in default for failing to file either a responsive pleading or a grounds of defense could present during the trial for damages. This Court held: "Neither [former] Rule 3:19 nor any statute prohibits counsel for a defendant in default from . . . offering evidence in mitigation of damages." Id. at 276, 156 S.E.2d at 575. The defendant was thus permitted to raise the affirmative defense of mitigation of damages despite that defense not having been specifically pled.

Our holding in Chappell highlights the distinctive characteristics that mitigation of damages has as an affirmative defense. Unlike most affirmative defenses, mitigation of damages is not a defense that, if proven, constitutes an absolute bar to the plaintiff's claim. Instead, a defense of mitigation recognizes that a plaintiff's conduct following the defendant's negligence "may be a reason for reducing damages," but it does not necessarily bar all recovery. Sawyer v.

15

Comerci, 264 Va. 68, 77, 563 S.E.2d 748, 754 (2002). This context distinguishes mitigation of damages from those other affirmative defenses or special pleas, which, if proven, constitute an absolute defense to the claim. See, e.g., Nelms v. Nelms, 236 Va. 281, 289, 374 S.E.2d 4, 9 (1988) (listing as "[f]amiliar illustrations" such defenses as statute of limitations, absence of proper parties, res judicata, usury, a release, prior award, infancy, bankruptcy, denial of partnership, bona fide purchaser, and denial of an essential jurisdictional fact alleged in the bill) (citing E. Meade, Lile's Equity Pleading and Practice, § 199, p. 114 (3d ed. 1952)).

Because neither statute nor our precedent requires that mitigation of damages be specifically pled as a condition precedent to its assertion as an affirmative defense, and taking into account the unique characteristics of this defense, we hold that mitigation of damages is not required to be specifically pled before a defendant may assert it, provided the issue has been otherwise shown by the evidence.[11] The trial court thus did not err in permitting Obici to offer a mitigation of damages instruction despite its failure to plead that defense, subject to the presence of sufficient evidence, which we address below.

---

[11] Our holding is limited solely to mitigation of damages as an affirmative defense and we express no opinion as to the specific pleading of any other affirmative defense.

16

B.   Choice of Hospital as Mitigation Evidence

Monahan also assigns error to the trial court's failure to grant his motion to instruct the jury to disregard the evidence regarding the emergency room facility to which Monahan was taken following his examination at Wakefield.  He asserts "[t]he evidence shows that the decision to take Monahan to Riverside hospital was made solely by his wife" and that her conduct cannot be imputed to him for the purpose of proving a failure to mitigate his damages.  Monahan emphasizes that Obici conceded at trial that no evidence suggested that the decision to take Monahan to Riverside "was a direct and proximate cause of any of his injuries or damages."

Obici responds that Monahan's own theory of the case put at issue the timeliness of treatment, including the relevance of the delay in treatment caused by going to Riverside instead of a closer facility.  It argues that concluding the jury used the choice of hospital evidence to reduce damages is "the stuff of speculation" that ignores the other evidence supporting the defense of failure to mitigate damages.

Obici conceded that the evidence did not support a claim that the decision of which emergency care facility to use was a direct or proximate cause of any damages Monahan suffered.  Obici acknowledged to the trial court that "there isn't an expert that said by taking this patient to

17

Riverside, that there was additional damage caused."

Furthermore, Obici submitted it was not arguing that this evidence "was a superseding or intervening cause" of the stroke.

As such, there was no evidence that by going to Riverside rather than another facility, Monahan's injuries were in any way affected. Thus, any evidence about choice of emergency room facility was irrelevant to whether Monahan failed to mitigate his damages. The trial court therefore erred in refusing to instruct the jury to disregard that evidence as Monahan properly requested.

Furthermore, this error cannot be considered harmless. The jury was improperly permitted to consider this testimony when deciding a verdict and, as discussed below, the jury was erroneously instructed regarding mitigation of damages. We have previously said, "where evidence and an instruction have been erroneously submitted to the jury and the record does not reflect whether such evidence and instruction formed the basis of the jury's verdict, we must presume that the jury relied on such evidence and instruction in making its decision." Johnson v. Raviotta, 264 Va. 27, 39, 563 S.E.2d 727, 735 (2002). Accordingly, we must presume the jury's consideration of damages was affected by the ability to consider the improper choice of hospital evidence under the mitigation instruction.

18

C.   Sufficiency of the Evidence to Support the Mitigation
Instruction

Monahan further contends the trial court erred in granting a jury instruction on mitigation of damages because the evidence did not support such an instruction.  Even if Obici was not required to specifically plead mitigation as we have decided, Monahan asserts there was no evidentiary basis for the mitigation instruction.  Monahan contends "there is insufficient evidence that Monahan refused any treatment recommended by Wiggins" and therefore there is no independent basis upon which the trial court could give a mitigation instruction.  We agree with Monahan.

Wiggins testified that she gave Monahan a choice to go to the emergency room while at Wakefield or to go home to rest and have his wife take him to the emergency room if his condition worsened.  Monahan avers he complied with this instruction by choosing the given alternative of going home, getting into bed and waiting for his wife.

Obici responds that there was "ample evidence" to support the mitigation instruction.  Obici cites the testimony of not only Wiggins, but also Monahan's expert witnesses, to support its contention that "the jury was required to determine whether Monahan had ignored Wiggins' medical advice and in doing so, failed to minimize his damages."

19

A patient's duty to mitigate damages after receiving negligent medical care is a specific application of the general requirement that:

> One who is injured by the wrongful or negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover.

Lawrence v. Wirth, 226 Va. 408, 412, 309 S.E.2d 315, 317 (1983) (quoting Haywood v. Massie, 188 Va. 176, 182, 49 S.E.2d 281, 284 (1948)). A mitigation of damages instruction is thus appropriate when the evidence shows that a plaintiff failed to mitigate his damages by "neglect[ing] his health following his physician's negligent treatment." Sawyer, 264 Va. at 77, 563 S.E.2d at 754 (quoting Lawrence, 226 Va. at 412, 309 S.E.2d at 317).

When asked to review jury instructions given by a trial court, "our responsibility is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Lombard v. Rohrbaugh, 262 Va. 484, 498, 551 S.E.2d 349, 356 (2001) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)) (internal quotation marks omitted). Under well-settled principles, "[a] jury instruction may be given only if there is evidence to support

20

the instruction." <u>Pollins v. Jones</u>, 263 Va. 25, 28, 557 S.E.2d 713, 714 (2002) (citing <u>Van Buren v. Simmons</u>, 235 Va. 46, 51, 365 S.E.2d 746, 749 (1988)). "The evidence presented in support of a particular instruction 'must amount to more than a scintilla.'" <u>Schlimmer v. Poverty Hunt Club</u>, 268 Va. 74, 78, 597 S.E.2d 43, 45 (2004) (quoting <u>Justus v. Commonwealth</u>, 222 Va. 667, 678, 283 S.E.2d 905, 911 (1981)).

In the case at bar, the record is insufficient to sustain the mitigation of damages instruction because it does not reflect any act of neglect by Monahan following Wiggins' treatment. Wiggins' testimony clearly reflects that she gave Monahan a choice of either going to the emergency room or going home:

> Q [Monahan's counsel:] [I]sn't it true that you told Larry that he either needed to go to the emergency room or please tell your wife to take you there if there's any change in the least?
>
> A [Wiggins:] Yes.
>
> Q[:] So you gave him the option of either going to the emergency department or telling his wife to take him to the emergency department . . . isn't that what you told him?
>
> A[:] Yes.

The uncontradicted evidence shows that Monahan chose one of the options his health care provider, Wiggins, offered to him: he had someone drive him home and went to bed. After his wife arrived home, his condition had worsened, and he was taken to an

21

emergency room, as Wiggins had suggested. Because Wiggins gave Monahan the alternative course of action of either going to the emergency room or going home, and because Monahan complied with that advice by electing to go home, his decision cannot be the basis for a mitigation of damages instruction. Monahan did not act contrary to the advice given to him by his health care provider, but followed one of the courses offered. Therefore, no act of negligence supporting a failure to mitigate damages can be attributed to him based on his following the course of action offered by Wiggins. Obici points to no other evidentiary basis for the instruction.

The trial court thus erred in granting Obici's instruction on mitigation of damages, as there was no evidentiary basis to support it. "If an issue is erroneously submitted to a jury, we presume that the jury decided the case upon that issue." Clohessy v. Weiler, 250 Va. 249, 254, 462 S.E.2d 94, 97 (1995). Accordingly, we cannot say that the trial court's error in instructing the jury on the plaintiff's duty to mitigate his damages was harmless. We must presume the jury's consideration of damages was affected by the improperly given mitigation instruction.

### III. CONCLUSION

Obici did not assign cross-error to the trial court's judgment that it was negligent. Thus, we do not review that

22

issue and will affirm the trial court's judgment as to Obici's liability.  Upon retrial, the finding of liability is binding upon Obici, and Monahan will not be required to establish that Obici was negligent.  We will also affirm that portion of the trial court's judgment that Obici was not required to specifically plead mitigation of damages as a condition precedent to asserting that defense.  However, we will reverse the trial court's judgment as to damages because it was error to give the instruction on mitigation of damages and not to grant the motion to strike the evidence concerning the decision to drive Monahan to Riverside Hospital.

We will therefore remand the case for a new trial limited to the issue of damages.  See Jenkins v. Pyles, 269 Va. 383, 390, 611 S.E.2d 404, 408 (2005); Rawle v. McIlhenny, 163 Va. 735, 750, 177 S.E. 214, 221 (1934) ("Where the verdict is for substantial though inadequate damages, it cannot upon any reasonable theory be considered a finding for the defendant, and it should be set aside, and a new trial granted which ordinarily should be limited to the question of the amount of damages").

Affirmed in part,
reversed in part,
and remanded.

23