COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Malveaux and Fulton
Argued at Fredericksburg, Virginia

GREATER WASHINGTON ENDODONTICS,
 P.C., ET AL.

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 1092-22-4       JUDGE MARY BENNETT MALVEAUX
                                         DECEMBER 12, 2023

PLAZA OFFICE REALTY I, LLC

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Thomas P. Mann, Judge

Kenneth S. Nankin (Nankin Law LLC, on briefs), for appellants.

Mathew D. Ravencraft (Ruhi F. Mirza; Rees Broome, PC, on brief),
for appellee.


Greater Washington Endodontics, P.C. ("Greater Washington") and Dr. Richard Pollock

appeal from the circuit court's final order entering judgment against them for holdover payments

owed to Plaza Office Realty I, LLC ("Plaza Office").  On appeal, Greater Washington argues that

the circuit court erred: (1) in ruling that Greater Washington "was in a holdover posture" following

the expiration of the parties' lease, (2) in ruling that no written demand for holdover payment was

necessary, (3) in ruling that Dr. Pollock was liable for breach of the guaranty of lease, and (4) by

denying its counterclaim based on Plaza Office's failure to return the security deposit.  Plaza Office

assigns cross-error to the circuit court's ruling on attorney fees.  For the following reasons, we

affirm the decision of the circuit court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

# I. BACKGROUND

On September 9, 2005, Plaza America Office Development, LLC entered into a ten-year lease agreement with Dr. Stanley Levin, Dr. Gary Leff, and Dr. Pollock for certain office space for a dental practice. Dr. Levin, Dr. Leff, and Dr. Pollock entered into a written guaranty of lease for the premises. Subsequently, Plaza Office, as successor in interest to the original landlord, and Greater Washington, as successor in interest to the original tenants, entered into amendments to the deed of lease, extending the term of the lease to December 31, 2019. The amendments also removed Dr. Levin and Dr. Leff as guarantors under the guaranty.

In October 2019, a representative of a potential purchaser of the dental practice approached Brady Roman, who provided management and leasing services for the premises, to discuss an assignment of the lease. The representative stated that they were negotiating with Dr. Pollock to buy the practice. That same month, Dr. Pollock informed Roman that a company was going to buy the practice and that the projected closing date for the sale was December 19, 2019.

On January 3, 2020, Roman emailed the buyer's representative, as well as Dr. Pollock, and asked them "where you are in the assignment of the lease." He also stated in his email that the lease was "now expired and in Holdover" and that he "need[ed] to get a new lease done or an extension ASAP or Holdover fees will start being billed." After sending this email, Roman informed employees of the management company that he had told Greater Washington that they would be billed for holdover payments. Plaza Office began calculating holdover payments on January 1, 2020.

On February 12, 2020, Dr. Pollock informed Roman that the potential purchaser had decided not to buy the dental practice and that "[a]fter much consideration [he] w[ould] not be renewing the lease." Greater Washington's dental equipment had remained on the premises in

anticipation of the practice's sale, and Greater Washington sold the equipment sometime between February 12 and 18, 2020.

On February 18, 2020, Dr. Pollock sent an email to Roman stating that

> [t]oday will be our last in the Reston Office as we discussed. We will no longer be seeing patients at this location after today. I have sold the equipment and I am awaiting the purchaser's information as to when the movers will remove the dental equipment. We have removed our personal items as of today and will be completed tomorrow.

Regarding the phrasing of the email, Dr. Pollock testified that the "[t]oday will be our last in the Reston Office" language was "poorly worded." Rather, he stated that Greater Washington neither treated any patients in the premises nor occupied the premises in any way in 2020. Dr. Pollock testified that due to the COVID-19 pandemic, it had been hard to find movers, but that Greater Washington had moved the dental equipment out of the premises on February 26, 2020.

On March 4, 2020, a Plaza Office property manager informed Roman that Greater Washington had "left a bunch of items in their suite." Roman told the property manager to contact Dr. Pollock directly to schedule an inspection of the premises. Roman also said that he had "made it clear to Dr. Pollock he would be charged holdover [payments] until the space was cleared out."

Plaza Office sent a letter to Greater Washington on March 13, 2020, stating that pursuant to the lease agreement, "an Event of Default has occurred and unless your full payment of $49,419.07 is received within five (5) days of receipt of this notice, then pursuant to the lease, Landlord may exercise any and all available rights and remedies under the Lease."

On March 18, 2020, a Plaza Office property manager informed Roman in an email that Greater Washington "is not responding for a walkthrough and [the] space is still full with stuff." That same day, Roman emailed Dr. Pollock asking if everything had been removed from the

premises. Roman also asked Dr. Pollock to contact the property managers to schedule an inspection. Dr. Pollock did not respond to this email.

Roman visited the premises and found filing cabinets, chairs, television monitors, computers, a telephone, a coffee maker, and personal items left behind by Greater Washington. At trial, Plaza Office introduced a set of photographs depicting these items. In an April 6, 2020 email, a property manager informed Dr. Pollock that all items left in the premises would be removed and disposed of by April 10, 2020. Plaza Office removed the remaining items from the premises.

On September 1, 2021, Plaza Office filed a complaint against Greater Washington and Dr. Pollock for breach of lease and breach of guaranty. Plaza Office sought to recover its calculated amount of holdover payments under the terms of the lease agreement, as well as attorney fees. Greater Washington filed a counterclaim alleging that Plaza Office failed to return its security deposit.

At trial, after Plaza Office presented its case-in-chief, Greater Washington moved to strike the evidence. Greater Washington argued that Section 28 of the lease agreement required that Plaza Office first send a demand letter before it could be liable for holdover payments and that although Plaza Office had sent a letter on March 13, 2020 demanding payment, the letter did not satisfy this requirement because it did not comply with general requirements for demands set forth in the lease agreement. It further argued that the doctrine of substantial compliance did not apply to the demand requirement. The circuit court took the motion under advisement. At the end of the trial, Greater Washington renewed its motion to strike, which the court again took under advisement.

The circuit court subsequently entered a final order finding that Greater Washington occupied the premises following the expiration of the lease until April 10, 2020 and that "no

written demand [wa]s necessary regarding the payment of the holdover lease obligations." It also found that Dr. Pollock "unconditionally and absolutely guaranteed the full, prompt, and complete payment by Greater Washington . . . and [he] has not satisfied his obligations under the [g]uaranty." The court dismissed Greater Washington's counterclaim regarding the security deposit. It entered judgment against Greater Washington and Dr. Pollock in the amount of $73,592.79 and also awarded Plaza Office $18,398.20 in attorney fees. This appeal followed.

## II. ANALYSIS

### A. Holdover

Greater Washington argues that the circuit court erred in finding that it was in holdover status after the lease agreement expired.

"Holdover occurs when a tenant in possession under a lease continues in possession beyond expiration of the lease." *Nehi Bottling Co., Inc. v. All-American Bottling Corp.*, 8 F.3d 157, 163 (4th Cir. 1993) (applying Virginia law); *see also Tenant*, *Black's Law Dictionary* (11th ed. 2019) (defining a "holdover tenant" as "[s]omeone who remains in possession of real property after a previous tenancy (esp. one under a lease) expires, thus giving rise to a tenancy at sufferance").

The determination of whether a holding over occurred is a question of fact for the fact finder to decide. *See Nehi Bottling Co.*, 8 F.3d at 163 (noting that the determination of whether a holdover occurred is an issue "not . . . of law but of fact for the jury's resolution"). In addition, "[w]here, as here, a trial court hears evidence *ore tenus*, a reviewing court is bound by the trial court's factual findings unless they are plainly wrong or unsupported by the evidence." *Blue Cross & Blue Shield v. St. Mary's Hosp.*, 245 Va. 24, 34 (1993).

Here, the circuit court made no specific factual findings as a basis for its ruling, but found that Greater Washington was a holdover tenant until April 10, 2020. Greater Washington argues

that the court erred in this factual finding because it neither used nor benefited from the premises after the lease expired. Because we conclude that there was evidence in the record supporting the circuit court's finding of holdover, we reject Greater Washington's argument.

The evidence adduced at trial included Dr. Pollock's February 18, 2020 email in which he stated "[t]oday will be our last in the Reston Office as we discussed" and "[w]e will no longer be seeing patients at this location after today." Although Dr. Pollock testified that the phrase "[t]oday will be our last in the Reston Office" was "poorly worded" and that Greater Washington did not treat any patients on the premises in 2020, the circuit court was free to accept this evidence as proof that Greater Washington continued to operate the dental practice until at least February 18, 2020.

It was also clear from the record that Greater Washington left personal property on the premises after the expiration of the lease. After December 31, 2019, Greater Washington still had dental equipment in the premises, which it sold and removed from the space on February 26, 2020. In March 2020, Roman visited the premises and found several items remaining, including filing cabinets, chairs, television monitors, computers, a telephone, a coffee maker, and personal items. These items were removed by Plaza Office on April 10, 2020.

We conclude that the circuit court was not plainly wrong in finding that the continued presence of Greater Washington's property on the premises constituted a holdover of the lease. "[T]here can be circumstances justifying a finding that a tenant is holding over even after the tenant has physically left the premises. The circumstances, however, must indicate the tenant's continued control and possession of the premises, which interferes with the lessor's use or possession of the premises." *Carroll Indep. Fuel Co. v. Wash. Real Est. Inv. Tr.*, 32 A.3d 128, 140 (Md. Ct. Spec. App. 2011). As noted above, holdover occurs when a tenant continues "in possession" following the expiration of the lease. *Nehi Bottling Co.*, 8 F.3d at 163.

- 6 -

"'Possession' is defined as: 'the act or condition of having in or taking into one's control or holding at one's disposal.'" *Shifflett v. Latitude Props., Inc.*, 294 Va. 476, 483 (2017) (quoting *Webster's 3rd Int'l Dictionary* 1770 (1993)). By leaving its property in the premises, Greater Washington exercised continued control over the premises until the items were removed by Plaza Office on April 10, 2020. This continued control interfered with Plaza Office's right to exclusively possess the premises after the expiration of the lease. Because Greater Washington continued to possess the premises via its property after the lease expired on December 31, 2019, we conclude that the circuit court did not err in finding that a holdover occurred from that date until April 10, 2020.[1]

---

[1] However, Greater Washington argues that the presence of its property on the premises of the lease did not create a holdover tenancy because, pursuant to Section 15 of the lease agreement, "[a]ll items of Tenant's personal property that are not removed from the Premises or the Building by Tenant at the termination of this Lease shall be deemed abandoned and become the exclusive property of Landlord upon the expiration of the Lease Term." Greater Washington thus argues that Plaza Office became the sole owner of the property as of January 1, 2020. We reject this argument, finding that this provision of the lease does not apply here where Greater Washington held over after the expiration of the lease by leaving its property on the premises. Further, Greater Washington continued to exert control over the property itself, selling the dental equipment sometime between February 12 and 18, 2020, and later removing the equipment from the premises on February 26, 2020. This distinguishes this case from the case relied on by Greater Washington, *Carroll Independent Fuel*, 32 A.3d 128. In that case, the parties' lease provided that Carroll, the tenant who leased property for gas stations, would pay for and install new gasoline storage tanks for the leased properties and that at the end of the lease the tanks would belong to Washington, the commercial tenant. *Id.* at 133. Carroll later gave notice that it was terminating the lease but did not remove the tanks because, based on the lease's language, it believed that ownership of the tanks vested in Washington upon termination of the lease. *Id.* at 135, 137. On appeal, the Maryland appellate court reversed the circuit court's finding that Carroll was a holdover tenant because it had not removed the tanks. *Id.* at 142-43. The appellate court first found that, pursuant to the terms of the lease, once the lease terminated, Washington was the owner of the tanks. *Id.* at 142. It then found that the failure of a tenant to remove from the premises property owned by the landlord does not constitute holding over. *Id.* at 142-43. While similar to the case at hand, we find *Carroll* distinguishable, because Carroll did not assert any control over the tanks after the termination of the lease; rather, pursuant to the terms of the lease, it thought that the tanks belonged to Washington at the lease's termination and acted accordingly throughout the parties' dealings. Here, in contrast, Greater Washington did not give up its control in the personal property left on the premises during the holdover period.

B.  Demand for Holdover Payments

Greater Washington next argues that Section 28 of the lease agreement required that Plaza Office make a written demand for holdover payments from Greater Washington.

"A lease is a contract and 'when the terms of a contract are clear and unambiguous, a court must give them their plain meaning.'" *Landmark HHH, LLC v. Gi Hwa Park*, 277 Va. 50, 55 (2009) (quoting *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 57 (2008)).  "[W]hen interpreting a contract, we construe it as written and will not add terms the parties themselves did not include." *Id.* at 57.  In addition, "[n]o word or clause is to be treated as meaningless if any reasonable meaning *consistent with the other parts of the contract* can be given to it." *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 381 n.10 (2018) (quoting *Ames v. Am. Nat'l Bank of Portsmouth*, 163 Va. 1, 39 (1934)).

The relevant portion of Section 28 of the lease agreement provides that

> [d]uring any holdover tenancy (whether or not consented to by Landlord), Tenant agrees to pay to Landlord, an occupancy charge equal to, (a) for the first (1st) month of such holdover, one hundred fifty percent (150%) of the Base Rent and Additional Rent as was in effect under the Lease for the last month of the Lease Term, and (b) commencing on the first day of the second (2nd) month of such holdover period and continuing for the duration of such holdover, two hundred percent (200%) of the Base Rent and Additional Rent as was in effect under this Lease for the last month of the Lease Term.  Such payments shall be made within five (5) days after Landlord's demand, and in no event less often than once per month (in advance).

Greater Washington argues that the circuit court erred in concluding that this language did not require that Plaza Office provide a demand for holdover payments.  It contends that the last sentence, "[s]uch payments shall be made within five (5) days after Landlord's demand, and in no event less often than once per month (in advance)," should be interpreted as follows: the first phrase means that Plaza Office must make a demand for holdover payments and that Greater Washington must pay within five days of such demand; and the second phrase means that, if

Plaza Office has made the required demand but Greater Washington has not yet remitted payment, Greater Washington must do so by the end of the month with Plaza Office not required to make any further demands.

We disagree with Greater Washington, concluding that the circuit court did not err in determining that Section 28 does not require a demand for holdover payments by Plaza Office. Greater Washington's interpretation of the "within five (5) days" sentence of Section 28 ignores the preceding sentence of that provision. The preceding sentence provides that, "[d]uring any holdover tenancy," Greater Washington agrees to pay a certain "occupancy charge . . . for the first (1st) month of such holdover" and then a greater occupancy charge "commencing on the first day of the second (2nd) month of such holdover period and continuing for the duration of such holdover." This provision clearly places an unconditional obligation on Greater Washington to pay monthly holdover payments while it remained in holdover. The next sentence of the provision, coming after that unconditional obligation has been declared and specified, states that the holdover payments must be made "within five (5) days after Landlord's demand, and in no event less often than once per month (in advance)." This sentence again states Greater Washington's obligation to remit holdover payments to Plaza Office on a monthly basis, and also states that this payment must be in advance of the month in which holdover will occur. Read in context with the provision requiring that holdover payments be made monthly, the "within five (5) days after Landlord's demand" sentence provides that Plaza Office make a demand only if it wanted to require Greater Washington to pay prior to the start of the next month. Therefore, we conclude that the circuit court did not err in finding that Plaza Office did

not need to make a written demand[2] for holdover payments, as the lease agreement specifically obligated Greater Washington to make these payments.[3]

## C. Guaranty of Lease

Dr. Pollock argues that the circuit court erred by ruling that he was liable for breach of the guaranty of lease.

"[A] guaranty is a separate, collateral, and secondary undertaking to answer for the debt of another in event of his default." *Am. Indus. Corp. v. First & Merchs. Nat'l Bank*, 216 Va. 396, 398 (1975). "[T]o recover on a guaranty, the obligee must establish . . . [1] the existence and ownership of the guaranty contract, [2] the terms of the primary obligation and [3] default on that obligation by the debtor, and [4] nonpayment of the amount due from the guarantor under the terms of the guaranty contract." *McDonald v. Nat'l Enters., Inc.*, 262 Va. 184, 189 (2001).

The December 2018 guaranty of lease provided that Dr. Pollock

> unconditionally and absolutely guarantees unto Landlord, its
> successors and assigns, the full, prompt and complete payment by
> Tenant . . . of the rent and additional rents provided in the Lease
> and the prompt, faithful and complete performance and observance
> by Tenant . . . of all of the terms, covenants and conditions of the
> Lease on the Tenant's part to be performed and/or observed.

Relying on *McDonald* for the principle that "if there is no obligation on the part of the principal obligor, then there is also none on the guarantor," 262 Va. at 189, Dr. Pollock argues that he was not liable under this guaranty for the holdover payments because Greater Washington itself had no obligation to pay holdover payments. He contends that Plaza Office failed to give proper demand for holdover payments under the terms of the lease agreement and therefore Greater

---

[2] Section 30 of the lease agreement provides that "[a]ll notices and demands" required under the lease "shall be in writing, and shall be sent by United States certified mail."

[3] Because we conclude that a written demand for holdover payment was not required under Section 28 of the lease agreement, we do not address Greater Washington's argument that Plaza Office's demand was deficient.

Washington was not liable for the holdover payments. Therefore, he asserts he also was not liable for the holdover payments, as his liability as guarantor equals that of Greater Washington. We reject this argument based on our ruling on notice above. A written demand for holdover payments was not required under the terms of Section 28 of the lease agreement; thus, Greater Washington was liable for holdover payments to Plaza Office. Accordingly, as Greater Washington was obligated to pay the holdover payments pursuant to the lease agreement, so too was Dr. Pollock obligated to pay the holdover payments under the terms of the guaranty contract.

### D. Security Deposit

Greater Washington next argues that the circuit court erred by denying its counterclaim based on Plaza Office's failure to return its security deposit.

Greater Washington provided a security deposit in the amount of $6,044.47. After Plaza Office filed its complaint against Greater Washington, Greater Washington filed a counterclaim alleging that Plaza Office failed to return its security deposit. In Plaza Office's answer to the counterclaim, its sole ground of defense was that "[t]he Counterclaim fails to state a claim upon which relief can be granted."

Section 3.1 of the lease agreement provides that "the Security Deposit shall be returned . . . to Tenant within thirty (30) days after the termination of this Lease." Section 34 of the lease agreement states that "in no event shall Landlord be in default of this Lease unless Tenant notifies Landlord in writing of the precise nature of the alleged breach by Landlord, and Landlord fails to cure such breach within thirty (30) days after the date of Landlord's receipt of such notice." Plaza Office cited Section 34 at trial, but not in its pleadings, as its defense to the counterclaim. It argued that Greater Washington was not entitled to recover because it had not provided notice of its claim that Plaza Office had breached the lease by not returning the security deposit.

Greater Washington argued at trial and now argues on appeal that Plaza Office's notice argument fails because Plaza Office failed to properly plead the lack of notice defense, which it asserts is an affirmative defense. Plaza Office argues in response that the requirement to provide notice and an opportunity to cure any default, including the return of the security deposit, is not an affirmative defense; rather, it is an essential element of Greater Washington's breach of lease claim which it failed to plead or prove.

"As a general rule, affirmative defenses must be pled to be relied on at trial." *Denton v. Browntown Valley Assocs., Inc.*, 294 Va. 76, 88 (2017). However, there are three exceptions to the general rule: "(1) where the issue addressed by the affirmative defense was not disclosed in the plaintiff's pleading; (2) where the affirmative defense is not an absolute bar to recovery; and (3) where the affirmative defense is 'addressed by statute.'" *New Dimensions, Inc. v. Tarquini*, 286 Va. 28, 36 (2013) (quoting *Monahan v. Obici Med. Mgmt. Servs.*, 271 Va. 621, 633 (2006)). "Traditional affirmative defenses or special pleas that constitute an absolute bar to recovery include 'statute of limitations, absence of proper parties, res judicata, usury, a release, prior award, infancy, bankruptcy, denial of partnership, bona fide purchaser, and denial of an essential jurisdictional fact alleged in the bill.'" *Id.* (quoting *Monahan*, 271 Va. at 634).

"The essential elements of a cause of action for breach of contract are: (1) 'a legal obligation of a defendant to the plaintiff,' (2) 'a violation or breach of that right or duty,' and (3) 'a consequential injury or damage to the plaintiff.'" *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546 (1989) (footnote omitted) (quoting *Caudill v. Wise Rambler*, 210 Va. 11, 13 (1969)).

In resolving the parties' dispute, we first conclude that Plaza Office's notice of breach was a condition precedent to Greater Washington's recovery of its security deposit. A "condition precedent" is "[a]n act or event, other than a lapse of time, that must exist or occur

- 12 -

before a duty to perform something promised arises," and "[i]f the condition does not occur and is not excused, the promised performance need not be rendered." *Condition*, *Black's Law Dictionary* (11th ed. 2019). The notice requirement in Section 34—"in no event shall Landlord be in default of this Lease unless Tenant notifies Landlord in writing of the precise nature of the alleged breach by Landlord, and Landlord fails to cure such breach within thirty (30) days after the date of Landlord's receipt of such notice"—created a condition precedent to Greater Washington's recovery of its security deposit, namely its contractual duty to notify Plaza Office that it was in breach of the lease agreement by not returning the security deposit, and to allow Plaza Office to cure such breach.

We next conclude, based on the specific facts of the instant case, that Plaza Office did not need to plead as a defense Greater Washington's failure to satisfy this condition precedent.[4] Because the required notice related to an essential element of Greater Washington's claim for the recovery of its security deposit, Plaza Office had no duty to specifically or affirmatively plead lack of notice. "The requirement that most such defenses be specifically pled arises from their collateral nature." *New Dimensions*, 286 Va. at 36. "Where a defendant seeks to rely upon an affirmative defense not apparent from the allegations pled and unrelated to the elements of a plaintiff's cause of action, that affirmative defense must be pled to avoid unfair surprise or prejudice to the plaintiff." *Id.* Here, the notice requirement is directly related to Greater Washington's cause of action because it was a condition precedent that must have been satisfied prior to Greater Washington's recovery of the security deposit. *See Wells Fargo Bank, N.A. v. Goebel*, 6 N.E.3d 1220, 1227 (Ohio Ct. App. 2 Dist. 2014) (distinguishing between an affirmative defense, which "is separate from the merits of the plaintiff's cause of action and bars

---

[4] We make no ruling as to if and when defendants may have to specifically plead the failure to fulfill a condition precedent as an affirmative defense in other circumstances.

- 13 -

recovery even when the plaintiff has established a prima facie case," and a condition precedent, which "is directly tied to the merits of the plaintiff's cause of action, which is itself contingent upon satisfaction of the condition"). Without the required notice, Plaza Office was not in default of the lease agreement, an essential element of Greater Washington's breach of contract claim.

Further, the rationale behind the rule requiring that affirmative defenses be pled to be relied on at trial is to avoid unfair surprise or prejudice to the plaintiff. That concern is not present here. The lack of notice defense raised by Plaza Office was apparent from the terms of the parties' lease agreement. Because the provision requiring notification by Greater Washington of any default by Plaza Office is clear from the language of the lease agreement, "there is little risk of prejudice or surprise resulting from not also requiring the pleading of an affirmative general defense."[5] *New Dimensions*, 286 Va. at 37.

When Plaza Office first raised the notice of default requirement at trial, it did not insert a collateral issue into the case. Because notice of default was a condition precedent directly related to an essential element of Greater Washington's burden of proof, and there was no risk of surprise from not requiring the specific pleading of the condition precedent, Plaza Office had no duty to affirmatively plead lack of notice. Accordingly, we conclude that the circuit court did not err in denying Greater Washington's counterclaim for the recovery of its security deposit.

---

[5] In *New Dimensions*, our Supreme Court held that the four statutory defenses set forth in the federal Equal Pay Act, 29 U.S.C. § 206(d)(1), were affirmative defenses, but they did not need to be pled in order to assert them at trial because there was little risk of prejudice or surprise. 286 Va. at 37. This holding supports our own conclusion in the instant case—here, the defense was apparent from the lease agreement, just as in *New Dimensions* the defense was apparent from the statute itself.

E.  Attorney Fees

In its cross-assignment of error, Plaza Office argues that the circuit court erred in awarding it only $18,398.20 in attorney fees, a lower amount that the $38,508.73 in attorney fees it requested in its attorney fees affidavit.

"On appeal, we will set aside a trial court's determination of the amount of attorneys' fees to be awarded only if the court abused its discretion." *West Square, L.L.C. v. Commc'n Techs., Inc.*, 274 Va. 425, 433 (2007).  "A prevailing party who seeks to recover attorneys' fees pursuant to a contractual provision . . . has the burden to present a prima facie case that the requested fees are reasonable and that they were necessary." *Id.*  "[W]hen a litigant seeks to pass along to an adversary the cost of attorney's fees, whether pursuant to a statute or a contract, a reviewing court must satisfy itself that the fees sought are reasonable." *Portsmouth 2175 Elmhurst, LLC v. City of Portsmouth*, 298 Va. 310, 334 (2020).  Our Supreme Court has "identified several factors that are relevant to the determination of reasonableness," including

> the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

*West Square*, 274 Va. at 433-34 (quoting *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998)).

In the instant case, Section 32 of the lease agreement provides, "[i]n the event that either party incurs any fees or expenses to enforce the provisions of this Lease, including, without limitation, attorneys' fees and litigation costs, then the non-prevailing party shall pay to the prevailing party such fees and expenses."  In its final order, the circuit court ordered that Greater

Washington pay "reasonable attorney's fees in the amount of $18,398.20" without further explanation.[6]

Plaza Office notes that $18,398.20 is exactly 25% of the $73,592.79 in damages the circuit court awarded to Plaza Office. Plaza Office argues that the circuit court's reduction of the attorney fees award constituted an abuse of discretion because the court arbitrarily reduced the amount of Plaza Office's attorney fees award to a flat 25% of the damages awarded without articulating any reason for doing so. In support of this argument, Plaza Office relies on *Lambert v. Sea Oats Condominium Association, Inc.*, 293 Va. 245 (2017). In *Lambert*, the circuit court awarded judgment in the amount of $500 to plaintiff, who sought attorney fees in the amount of $8,232. *Id.* at 248-49. The circuit court awarded $375 in attorney fees, explaining its rationale by noting that it thought that the amount of attorney fees sought was unreasonable when only $500 was awarded in damages. *Id.* at 251. Our Supreme Court rejected this approach, holding that a court can consider the amount of damages awarded in determining the reasonableness of attorney fees but also "that merely applying a ratio between the damages actually awarded and damages originally sought will not satisfy the reasonableness inquiry." *Id.* at 256. It further held that a court may not "use the amount of damages sought as a limit beyond which no attorney's fees will be awarded" and that a court may not reduce "the amount of attorney's fees based solely on the amount of damages awarded." *Id.* at 257, 259.

Here, unlike *Lambert*, there is no evidence in the record that the circuit court reduced the amount of attorney fees based solely on the amount of damages awarded. Further, the circuit court had the opportunity to review Plaza Office's attorney fees billing statement contained in its

---

[6] Although the lease agreement does not specify that the attorney fees must be reasonable, our Court has noted that "contracts awarding 'all attorney fees' contain an inherent presumption that the fee award will be reasonable, unless the parties clearly and expressly intend otherwise." *Mills v. Mills*, 77 Va. App. 543, 566 n.7 (2023).

attorney fees affidavit, which was admitted into evidence, and to determine what fees were reasonable based on the factors set forth above. As there is no evidence that the circuit court failed to do so, we conclude that the court did not abuse its discretion in awarding attorney fees to Plaza Office in an amount lower than it requested in its attorney fees affidavit.

### III. CONCLUSION

We hold that the circuit court did not err in ruling that Greater Washington was in holdover posture following the expiration of the parties' lease and also did not err in finding that no written demand for holdover payments was necessary. We further hold that the circuit court did not err in finding that Dr. Pollock was liable for breach of the guaranty of lease and in denying Greater Washington's counterclaim based on Plaza Office's failure to return the security deposit. Finally, the circuit court did not abuse its discretion in its award of attorney fees. Accordingly, we affirm the decision of the circuit court.

*Affirmed.*